Cheshire
No. 2011-165

THE STATE OF NEW HAMPSHIRE

v.

BURTON G. HOLLENBECK, JR.

Argued: March 13, 2012
Resubmitted: July 20, 2012
Opinion Issued: September 5, 2012

*Michael A. Delaney*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*Law Offices of Alan L. Zegas*, of Chatham, New Jersey (*Alan L. Zegas* on the brief and orally), and *Green & Utter, P.A.*, of Manchester (*Cathy J. Green* on the brief), for the defendant.

DALIANIS, C.J. The State appeals the order of the Superior Court (*McHugh*, J.) dismissing charges filed against the defendant, Burton G. Hollenbeck, Jr., Ph.D., because it determined that the statute upon which

they were based, RSA 632-A:2, I(g)(1) (2007), violated his state and federal substantive due process rights. We reverse.

For the purposes of this appeal, the following facts are undisputed. At the time of the alleged crimes, the defendant was a licensed psychologist, who provided therapy to the complainant in 2007. Less than a year after the therapy ended, the two became sexually involved. In April 2010, the defendant was charged with thirty counts of aggravated felonious sexual assault (AFSA) for engaging in sexual penetration with the complainant between February 1, 2008, and December 9, 2008. The indictments alleged that by engaging in sexual penetration with the complainant "within one year of the termination of their therapeutic relationship," the defendant "act[ed] in a manner which is not professionally recognized as ethical," thereby violating RSA 632-A:2, I(g)(1).

In December 2010, the defendant moved to dismiss the indictments, arguing, *inter alia*, that RSA 632-A:2, I(g)(1) violated his state and federal rights to substantive due process because it "criminalizes the private sexual conduct of consenting adults." The trial court agreed, and this appeal followed.

■ The issue before us is one of constitutional law, which we review *de novo*. *State v. MacElman*, 154 N.H. 304, 307 (2006). In reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds. *State v. Gubitosi*, 157 N.H. 720, 727 (2008). In other words, we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution. *Id.* We first address the defendant's claim under the State Constitution and rely upon federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

RSA 632-A:2, I(g) provides:

> A person is guilty of the felony of aggravated felonious sexual assault if such person engages in sexual penetration with another person
>
> . . .
>
> [w]hen the actor provides therapy, medical treatment or examination of the victim and in the course of that therapeutic or treating relationship or within one year of termination of that therapeutic or treating relationship:
>
> > (1) Acts in a manner or for purposes which are not professionally recognized as ethical or acceptable; or

(2) Uses this position as such provider to coerce
the victim to submit.

The only portions of this statute at issue are those that criminalize engaging in sexual penetration with another "within one year of the termination" of the therapeutic or treating relationship between them when doing so is not "professionally recognized as ethical or acceptable." RSA 632-A:2, I(g)(1). The other portions of RSA 632-A:2, I(g)(1) that relate to sexual relationships between therapists and their current clients are not at issue. Nor is RSA 632-A:2, I(g)(2), which criminalizes sexual contact between a therapist and his or her current or former client when he or she "[u]ses this position as such provider to coerce the victim to submit," at issue.

■ Our first task is to determine the scope of the defendant's challenge to RSA 632-A:2, I(g)(1). *See Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S. Ct. 1324, 1339 (2010). "An appellant may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both." *United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011). "A facial challenge is a head-on attack of a legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications." *Id.* (quotation and brackets omitted). To prevail on a facial challenge to a statute, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see State v. Furgal*, 161 N.H. 206, 210 (2010); *cf. United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010) (in First Amendment context, court recognizes another type of facial challenge under which a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep" (quotation omitted)). "[A]n as-applied challenge," on the other hand, "concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case." *Carel*, 668 F.3d at 1217 (quotation and emphasis omitted).

■ The defendant argues that he attacked RSA 632-A:2, I(g)(1) both facially and as-applied, but contends that the relief he sought, dismissal of the indictments against him, requires us to consider his challenge only as an as-applied challenge. *See id.; John Doe No. 1 v. Reed*, 130 S. Ct. 2811, 2817 (2010). The defendant's as-applied challenge relies solely upon the language of the indictments, which tracks, nearly exactly, the language of RSA 632-A:2, I(g)(1). Under these circumstances, there is no meaningful difference between his as-applied and facial challenges. *See United States*

*v. Riquene*, No. 3:10-cr-227-J-34TEM, 2012 WL 171080, at *7 n.9 (M.D. Fla. Jan. 20, 2012) (when as-applied challenge is not "tied to any case-specific discussion that would make [defendant's] as-applied challenge different from his facial challenge," court treats them as the same; moreover, to extent that as-applied challenge depends upon facts and evidence beyond those given in indictment, it must be denied before trial).

■ The dissent argues that because the trial court stated that it was undisputed that the relationship between the defendant and the complainant was consensual, the defendant's as-applied challenge is ripe for review. We disagree. Under the statute variation at issue, lack of consent is irrelevant; it is not an element of the crime for which the defendant was charged. *See* RSA 632-A:2, I(g)(1). As the dissent itself points out, "the legislature has determined that all patients are legally incapable, for an admittedly arbitrary period of one year after the termination of therapy, of consenting to sex with a former therapist." Accordingly, the trial court's finding did not transform this case from a facial to an as-applied challenge.

Moreover, in this case, unlike the cases upon which the dissent relies, the operative facts *are* disputed. In this case, we have no facts, jury-decided or otherwise, which would allow us to opine as to whether the complainant is part of "that subset of adults who may not easily refuse consent to sex with a former therapist." Accordingly, we consider the defendant's claim to be a facial challenge to the portion of RSA 632-A:2, I(g)(1) that relates to therapists and their former clients, and hold that to prevail, he must demonstrate that there is no set of circumstances under which the statute might be valid. *See Furgal*, 161 N.H. at 210.

■ We begin our due process analysis by determining the nature of the right at issue, which in turn, dictates the level of scrutiny that we apply to the infringement of that right. *See McKenzie v. Town of Eaton Zoning Bd. of Adjustment*, 154 N.H. 773, 782 (2007) (Duggan, J., concurring specially); *cf. Bleiler v. Chief, Dover Police Dep't*, 155 N.H. 693, 697 (2007). "The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997); *see Collins v. Harker Heights*, 503 U.S. 115, 125 (1992) (Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them" (quotation omitted)). "The substantive component of due process provides heightened protection against government interference with certain fundamental rights and liberty interests." *Cook v. Gates*, 528 F.3d 42, 49 (1st Cir. 2008) (quotation omitted); *Glucksberg*, 521 U.S. at 720. In addition to the specific freedoms protected by the Bill of Rights, the Supreme Court has ruled that the "liberty"

specially protected by the Due Process Clause includes the rights to: marry, have children, direct the education of one's children, enjoy marital privacy, use contraception, maintain bodily integrity, choose to have an abortion, and refuse unwanted medical treatment. *Glucksberg*, 521 U.S. at 720; *see Cook*, 528 F.3d at 49.

■ When there is no fundamental right or protected liberty interest at stake, we review the infringement of a right or interest under our rational basis standard of review, which provides that a statute is constitutional if it is rationally related to a legitimate governmental interest. *Cook*, 528 F.3d at 48 n.3; *see State v. Haas*, 155 N.H. 612, 613 (2007). By contrast, a heightened standard of review applies when a fundamental right or protected liberty interest is at issue. *See Bleiler*, 155 N.H. at 699-700; *Glucksberg*, 521 U.S. at 721; *Cook*, 528 F.3d at 55-56.

In this case, the parties dispute whether a fundamental right or protected liberty interest is at stake. The defendant contends that RSA 632-A:2, I(g)(1) burdens the exercise of a constitutionally protected right to engage in private consensual sexual conduct with another adult. Accordingly, he argues that we must review the infringement of his right under our strict scrutiny standard, which requires that "the infringement [must be] narrowly tailored to serve a compelling state interest," *Glucksberg*, 521 U.S. at 721 (quotation omitted), or some other heightened standard of review. *See, e.g., Bleiler*, 155 N.H. at 699-700. The State argues that "whatever the nature of the right at issue here, . . . it is certainly not fundamental" or even entitled to constitutional protection. Therefore, the State asserts, we should apply our rational basis standard of review.

To support their arguments, both parties rely upon the Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558, 563, 564 (2003), which concerned a substantive due process challenge to a Texas statute that made it a crime for two people of the same gender to engage in sodomy. The specific constitutional question was "whether the petitioners were free as adults to engage in the private conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Lawrence*, 539 U.S. at 564; *Cook*, 528 F.3d at 49. In deciding this question, the court found it necessary to overrule *Bowers v. Hardwick*, 478 U.S. 186 (1986), which upheld a Georgia statute that made it a crime to engage in sodomy.

The *Lawrence* court overruled *Bowers* after deciding that the *Bowers* court had "misapprehended the claim of liberty . . . presented to it" by defining the issue before it as "whether there is a fundamental right to engage in consensual sodomy." *Lawrence*, 539 U.S. at 567. To the contrary, the *Lawrence* Court explained, the laws at issue in both *Bowers* and

*Lawrence* "touch[ ] upon the most private human conduct, sexual behavior, and in the most private of places, the home." *Id.* According to the Court, the statutes at issue in *Bowers* and *Lawrence* sought "to control a personal relationship that, whether or not entitled to formal recognition in the law, is within the liberty of persons to choose without being punished as criminals." *Id.* After overruling *Bowers*, the Court then invalidated the Texas statute because it "furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." *Id.* at 578. The court explained:

> The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter. The case does involve two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle. The petitioners are entitled to respect for their private lives. The State cannot demean their existence or control their destiny by making their private sexual conduct a crime. Their right to liberty under the Due Process Clause gives them the full right to engage in their conduct without intervention of the government. It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter.

*Id.* (quotation omitted).

■ "Courts and commentators interpreting *Lawrence* diverge over the doctrinal approach employed to invalidate the petitioners' convictions." *Cook*, 528 F.3d at 51. Some have interpreted *Lawrence* to apply the rational basis standard of review; others interpret it as applying strict scrutiny. *Id.* at 51 nn. 6-7 (citing cases). "And a third group view the case as applying a balancing of state and individual interests that cannot be characterized as strict scrutiny or rational basis." *Id.* We find ourselves in the third group. Like the First and Ninth Circuit Courts of Appeals, "we are persuaded that *Lawrence* did indeed recognize a protected liberty interest for adults to engage in private, consensual sexual intimacy and applied a balancing of constitutional interests that defies either the strict scrutiny or rational basis label." *Id.* at 52; *see Witt v. Department of Air Force*, 527 F.3d 806, 816-17 (9th Cir. 2008).

■ Like the Ninth Circuit, "[w]e cannot reconcile what the Supreme Court did in *Lawrence* with the minimal protections afforded by traditional

rational basis review." *Witt*, 527 F.3d at 816. "The criticism that the Court in *Bowers* had misapprehended the extent of the liberty at stake does not sound in rational basis review." *Id.* at 817 (quotation omitted). If the Court were reviewing whether the *Bowers* Court had correctly applied the rational basis test, it would have had no reason to consider the extent of the liberty involved. *Id.* "Rational basis review does *not* permit consideration of the strength of the individual's interest or the extent of the intrusion on that interest caused by the law; the focus is entirely on the rationality of the state's reason for enacting the law." *Cook*, 528 F.3d at 55.

Additionally, the *Lawrence* Court's rationale for its holding is inconsistent with rational basis review. *Witt*, 527 F.3d at 817. The Court held that the Texas statute "furthers no legitimate state interest *which can justify its intrusion into the personal and private life of the individual.*" *Lawrence*, 539 U.S. at 578 (emphasis added). Had the Court applied rational basis, it would not have asked whether the state interest "justified" the intrusion, for under rational basis review, "any hypothetical rationale for the law would do." *Witt*, 527 F.3d at 817. Had the Court applied rational basis review, it would have upheld the petitioners' convictions. *Cook*, 528 F.3d at 52. The state interest that Texas offered to justify the statute was the government's interest in promoting moral conduct. *Lawrence*, 539 U.S. at 582 (O'Connor, J., concurring); *see Cook*, 528 F.3d at 52. This is a legitimate state interest. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569 (1991). "Thus, *Lawrence's* holding can only be squared with the Supreme Court's acknowledgement of morality as a rational basis by concluding that a protected liberty interest was at stake, and therefore a rational basis for the law was not sufficient." *Cook*, 528 F.3d at 53.

The fact that "virtually every case it relied upon for support" recognized a protected liberty interest further suggests that the right *Lawrence* recognized was a protected liberty interest. *Id.* at 52; *see Lawrence*, 539 U.S. at 564-66 (citing cases).

Finally, the language employed throughout *Lawrence* supports interpreting it to recognize a protected liberty interest. The Court began its opinion by explaining the nature of the liberty protected by the Constitution: "Liberty protects the person from unwarranted government intrusions into a dwelling or other private places. . . . And, there are other spheres of our lives and existence . . . where the State should not be a dominant presence. Freedom extends beyond spatial bounds." *Lawrence*, 539 U.S. at 562. "The instant case," the Court explained, "involves liberty of the person both in its spatial and in its more transcendent dimensions." *Id.* The Court used the word "spatial" because the case concerned conduct occurring at home, and the word "transcendent" because it involved the freedom of the petitioners to engage in "certain intimate conduct." *Id.* The

decision to engage in certain intimate sexual conduct, with another consenting adult, is central, the Court explained, to a person's autonomy. *Id.* The right to engage in private, consensual sexual conduct "is a promise of the Constitution that there is a realm of personal liberty which the government may not enter." *Id.* at 578 (quotation omitted).

Having defined the constitutional interest recognized in *Lawrence*, we hold that the defendant's facial challenge fails. We agree with the State that the kind of sexual relationship alleged here is not included in the constitutional right *Lawrence* recognized. "*Lawrence* did not identify a protected liberty interest in all forms and manner of sexual intimacy." *Cook*, 528 F.3d at 56; *see Muth v. Frank*, 412 F.3d 808, 818 (7th Cir. 2005). Instead, the *Lawrence* Court "made . . . clear that there are . . . types of sexual activity that are beyond the reach of that opinion," *Cook*, 528 F.3d at 56, specifically, sexual activity involving minors, or "persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused." *Lawrence*, 539 U.S. at 578; *see Muth*, 412 F.3d at 818 (*Lawrence* does not apply to invalidate state law criminalizing incest); *Lowe v. Swanson*, 663 F.3d 258, 264-65 (6th Cir. 2011) (same). Here, RSA 632-A:2, I(g) includes such other types of activity. *See Cook*, 528 F.3d at 56. RSA 632-A:2, I(g) criminalizes a sexual relationship between a therapist and a former client, which is the kind of relationship "where consent might not easily be refused." *Lawrence*, 539 U.S. at 578. *Lawrence* did not recognize a constitutional right to engage in this conduct. *See id.*

Because we conclude that the defendant has no constitutionally protected right at stake, we apply our rational basis standard of review to his facial challenge. The rational basis test requires that legislation only be rationally related to a legitimate governmental interest. *State v. Haas*, 155 N.H. 612, 613 (2007). The party challenging the legislation has the burden of proof. *Id.* The rational basis test "contains no inquiry into whether legislation unduly restricts individual rights." *Boulders at Strafford v. Town of Strafford*, 153 N.H. 633, 641 (2006). Further, the legitimate government interest posited by the State need not be the State's actual interests in adopting the statute. *Cmty. Res. for Justice v. City of Manchester*, 154 N.H. 748, 757 (2007). Nor need the State's posited interest be based upon facts because "[i]n rational basis review, we will not independently examine the factual basis for [a statute]." *Id.* "Rather, we will inquire only as to whether the legislature could reasonably conceive to be true the facts upon which [the State's interest] is based." *Id.* (quotation omitted).

The defendant has not met his burden of establishing that RSA 632-A:2, I(g)(1) is facially unconstitutional. Here, the State has articulated

legitimate governmental interests in protecting those who are vulnerable to exploitation from being exploited, *see State v. Frost*, 141 N.H. 493, 496-97 (1996), and in maintaining the integrity of the mental health profession. As the State argues in its brief, the statute was "intended to further the State's legitimate . . . interests in protecting persons whose ability to consent to sexual contact may have been compromised by the inherent nature of the treatment relationship and in maintaining the integrity of the mental health treatment professionals."

Moreover, RSA 632-A:2, I(g)(1) is rationally related to those legitimate interests. It was rational for the legislature to impose a one-year limitation on sexual relationships between therapists and their former clients. As the State explains: "[C]ommon sense dictates that any coercive influence on former patients is likely to be at its strongest during the first year after the treatment relationship has ended." Indeed, when the legislature amended RSA 632-A:2, I(g)(1) to pertain to therapists and their former clients in 1998, it considered an article, which observed that while "a sexual or romantic relationship that immediately follows the termination of the physician-patient relationship may be more suspect than one that occurs after considerable time has passed[,] . . . [r]esearch on psychotherapists has shown that patients experience strong feelings about their therapists for 5 to 10 years after the termination of treatment." Council on Ethical and Judicial Affairs, American Medical Association, *Sexual Misconduct in the Practice of Medicine*, 266 J. AM. MED. ASS'N 2741, 2743-44 (Nov. 1991). We conclude that the legislature could reasonably conceive these facts to be true, and, thus, that RSA 632-A:2, I(g)(1) serves or could conceivably serve legitimate governmental interests. *See Cmty. Res. for Justice*, 154 N.H. at 757.

■ While the defendant argues that the one-year limitation is arbitrary, in a sense, every line drawn by the legislature is arbitrary. *See Estate of Cargill v. City of Rochester*, 119 N.H. 661, 667 (1979). "That exercise of discretion, however, is a legislative, not a judicial function." *Id.* (quotation omitted). To satisfy rational basis review, the legislature's line drawing need only be rationally related to a legitimate governmental purpose. *See id.*

Because the defendant has not met his burden of proving that RSA 632-A:2, I(g)(1) is not rationally related to a legitimate governmental purpose in all circumstances, *see Salerno*, 481 U.S. at 745; *Furgal*, 161 N.H. at 210, his facial challenge fails. We reach the same result under the Federal Constitution as we do under the State Constitution because the Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances, *see Lawrence*, 539 U.S.

at 578. We express no opinion as to the validity of any as-applied challenge that the defendant may bring in the future.

*Reversed.*

BASSETT, J., concurred; GALWAY, J., retired, and FITZGERALD, J., retired superior court justice, specially assigned under RSA 490:3, concurred; HICKS, J., dissented.

HICKS, J., dissenting. Because I believe that the statute under which the defendant is indicted is unconstitutional as applied to him, I respectfully dissent.

Unlike the majority, I would reach the defendant's as-applied challenge. The majority finds "no meaningful difference between [the defendant's] as-applied and facial challenges" because his "as-applied challenge relies solely upon the language of the indictments, which tracks, nearly exactly, the language of RSA 632-A:2, I(g)(1)." I disagree.

In his motion to dismiss, the defendant asserts that his "prosecution [under the statute] constitutes a violation of his constitutionally protected fundamental right to engage in private *consensual* sexual conduct with other adults." (Emphasis added.) No allegations concerning consent or lack thereof are contained in the indictments against him. The majority cites *United States v. Riquene*, No. 3:10-cr-227-J-34TEM, 2012 WL 171080, at *7 n.9 (M.D. Fla. Jan. 20, 2012), for the proposition that "to [the] extent [the defendant's] as-applied challenge depends upon facts and evidence beyond those given in [the] indictment, it must be denied before trial." I acknowledge the soundness of that proposition in the great majority of cases. *See, e.g., United States v. Pope*, 613 F.3d 1255, 1259-60 (10th Cir. 2010) (discussing rule). There are, however, exceptions. *See id.* at 1260-61. For instance, the United States Court of Appeals for the Tenth Circuit recognized that a district court may "dismiss charges at the pretrial stage under the limited circumstances where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case." *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994) (dismissal under FED. R. CRIM. P. 12(b)). In *United States v. Engstrum*, 609 F. Supp. 2d 1227, 1229 n.6 (D. Utah 2009), that exception was used to consider, prior to trial, a motion to dismiss an indictment on grounds that the underlying statute was unconstitutional as applied to the defendant.

In the instant case, the trial court's order recited the "undisputed fact[]" that the defendant and the complainant "had a consensual sexual relationship in 2008, less than one year after [she] stopped treating with [him]." The State does not explicitly challenge that "undisputed fact[]" on appeal, but

rather suggests that it is legally irrelevant. The State asserts, for instance, that "the statute does not penalize defendants for engaging in consensual sexual activity. Instead, it penalizes defendants for engaging in what the legislature has deemed nonconsensual sex, an activity to which there is no constitutional right whatsoever." It also asserts that the State "has a legitimate interest in protecting those who are vulnerable to exploitation because of their inability legally to consent." (Quotation omitted.)

This position reinforces my conviction that the defendant's as-applied challenge is now ripe for review because "reserving resolution of the issue could harm the defendant[] without presenting the constitutional question more clearly." *United States v. Beckford*, 966 F. Supp. 1415, 1423 (E.D Va. 1997). In other words, if lack of consent is not an element of, and actual consent is not a defense to, the crime, evidence related to whether the complainant in fact consented may be deemed irrelevant and inadmissible at trial. "Given that situation, the defendant[] likely would not present [his] theories at trial, and in reserving judgment on the constitutional question, the Court, in effect, would force the defendant[] to undergo prosecution pursuant to a potentially unconstitutional statute without obtaining the benefit of significant clarification of the facts." *Id.* Thus, I would consider the merits of the defendant's as-applied challenge.

The first step of the substantive due process analysis, as the majority notes, is to determine the nature of the right asserted, which then informs the level of scrutiny to apply. *See Aime v. Com.*, 611 N.E.2d 204, 209 (Mass. 1993) (stating that in substantive due process analysis under Federal Constitution, nature of individual interest at stake determines standard of review courts apply). I agree with the United States Court of Appeals for the First Circuit that *Lawrence v. Texas*, 539 U.S. 558 (2003), "recognize[d] a protected liberty interest for adults to engage in private, consensual sexual intimacy and applied a balancing of constitutional interests that defies either the strict scrutiny or rational basis label." *Cook v. Gates*, 528 F.3d 42, 52 (1st Cir. 2008); *see State v. Holmes*, 154 N.H. 723, 726-27 (2007) (noting that the *Lawrence* Court ruled "that substantive due process precludes the State from criminalizing private consensual sexual conduct between adults"). The United States Court of Appeals for the Ninth Circuit attempted to give form to that balancing test by adapting the heightened level of scrutiny applied in *Sell v. United States*, 539 U.S. 166 (2003). *Witt v. Department of Air Force*, 527 F.3d 806, 819 (9th Cir. 2008). Since that test supplies a useful vehicle for balancing the interests at issue here, I will apply it for purposes of this dissent:

> [W]hen the government attempts to intrude upon the personal and private lives of . . . [consenting adults], in a manner that implicates the rights identified in *Lawrence*, the government must

advance an important governmental interest, the intrusion must significantly further that interest, and the intrusion must be necessary to further that interest. In other words, for the third factor, a less intrusive means must be unlikely to achieve substantially the government's interest.

*Id.; cf. Cook*, 528 F.3d at 56 (*"Lawrence* balanced the strength of the state's asserted interest in prohibiting immoral conduct against the degree of intrusion into the petitioners' private sexual life caused by the statute in order to determine whether the law was unconstitutionally applied.").

The State asserts that RSA 632-A:2, I(g) is part of "a comprehensive statutory scheme that was intended to further the State's legitimate, if not compelling, interests in protecting persons whose ability to consent to sexual contact may have been compromised by the inherent nature of the treatment relationship, and in maintaining the integrity of the mental health treatment professions." I will assume for purposes of this dissent that these interests are "important" under the *Witt* balancing test and that the statute significantly furthers those interests. *Witt*, 527 F.3d at 819.

I conclude, however, that the statute falters on the third prong. With respect to the interest in maintaining the integrity of mental health professions, I fail to see how this interest cannot be substantially achieved through the less intrusive means of licensing statutes and sanctioning mechanisms of professional boards. *See* RSA ch. 330-A (2011 & Supp. 2011) (Mental Health Practice).

The more significant interest, in my mind, is that of protecting persons whose ability to consent actually has been compromised by the treatment relationship. The State points to the recognition by other courts of "the increased risk of coercion that flows from the inherent nature of a psychotherapist-patient relationship." Coercion by the therapist, however, is explicitly criminalized under RSA 632-A:2, I(g)(2) (2007) (variant of offense containing element that the defendant "[u]ses this position as such provider to coerce the victim to submit"). Thus, the legislature addressed that concern in a section of the statute not involved in this case. Moreover, the State notes that it "informed the [trial] court that it could not bring the charges under 'any other section of RSA 632-A:2,' so 'the practical effect of the [c]ourt's [o]rder m[ight] be to bar the State from prosecuting the case.' " Apparently, then, coercion by use of the defendant's position as the complainant's therapist is not at issue here.

The State also contends that the therapist-patient relationship is one in which "consent might not easily be refused," *Lawrence*, 539 U.S. at 578, and thus lies outside the scope of the right recognized in *Lawrence*. It asserts that "[a]uthorities have recognized that a . . . therapist-patient relationship

is just such a relationship because the . . . therapist wields power over the patient and could easily exploit his or her vulnerabilities, even after the relationship has ended."

I acknowledge that the *Lawrence* Court distinguished the case before it from other situations:

> The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter.

*Lawrence*, 539 U.S. at 578. Nevertheless, I would hesitate to read too much into this *dicta*, which merely stated what was *not* before the Court.

> It is true that *Lawrence* did not involve a case where consent was in doubt. *Lawrence* explicitly said as much: "[The present case] does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused." [539 U.S. at 578.] But that distinction does not conclusively decide this case. The Supreme Court was simply making clear what could just as well have gone unsaid — that the Court expresses no view as to issues not before it.

*Anderson v. Morrow*, 371 F.3d 1027, 1037 (9th Cir. 2004) (Berzon, J., concurring in part and dissenting in part).

To declare all sexual relationships between therapists and their former patients within one year after termination of therapy constitutionally unprotected because some former patients might not easily refuse consent makes an end-run around *Lawrence*. Instead, the inquiry must start with the premise that adults have "a protected liberty interest . . . to engage in private, consensual sexual intimacy." *Cook*, 528 F.3d at 52. Then, the State's interest in protecting that subset of adults who may not easily refuse consent to sex with a former therapist must be balanced "against the degree of intrusion into the [defendant's] private sexual life caused by the statute in order to determine whether the law [is] unconstitutional[] [as] applied." *Id.* at 56; *cf. Paschal v. State*, No. CR 11-673, 2012 WL 1034538, at *10-11 (Ark. March 29, 2012) (stating that under state constitution, "[t]he State misapprehends the issue when it asserts that there is no fundamental right for a public high school teacher to have sex with an eighteen-year-old high school student enrolled in that school" and clarifying that "[t]he issue

is whether the statute, as applied in this case, infringes on [the defendant's] fundamental right to engage in private, consensual, noncommercial acts of sexual intimacy with an adult").

The degree of intrusion here is severe: the defendant faces strict criminal liability. The State need not prove that the relationship between the defendant and the complainant actually impaired her ability to refuse consent to the charged sexual contact. *See* RSA 632-A:2, I(g)(1) (2007). Rather the legislature has determined that all patients are legally incapable, for an admittedly arbitrary period of one year after the termination of therapy, of consenting to sex with a former therapist. That determination applies whether the patient was in therapy for ten years or one session, whether the sexual relationship began the day after therapy terminated or 364 days after termination. To declare all adult psychotherapy patients legally incapable of consenting to sex with their former therapist because the therapy relationship is one "where consent *might* not easily be refused," *Lawrence*, 539 U.S. at 578 (emphasis added), and in so doing impose strict criminal liability on the therapist even when the "protected" partner was actually capable of giving or refusing consent and did, in fact, freely give it, simply goes too far. Although the issue is not before us, one might wonder about the burden thereby placed upon the rights of the "protected," but fully capable, partner. *Cf. State v. Frost*, 141 N.H. 493, 497, 502 (1996) (noting that a "subset of 'mentally defective' persons *is* capable of legally consenting to sexual relations and thus does not require protection," but finding it unnecessary to reach defendant's argument that RSA 632-A:2, I(h), as applied, "violates the [constitutional and statutory] rights of 'mentally defective' people"); *Anderson*, 371 F.3d at 1029, 1040-41 (Berzon, J., concurring in part and dissenting in part) (discussing "moderately retarded" adult's ability to consent to sex in addressing "whether the sexual liberty interest outlined in *Lawrence* regulates the manner in which a state drafts and applies its statutory rape law as applied to adult victims").

I cannot conclude that "a less intrusive means [would] be unlikely to achieve substantially the government's interest." *Witt*, 527 F.3d at 819. Accordingly, I conclude that RSA 632-A:2, I(g)(1) is unconstitutional as applied to the defendant.