NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Governor's Office for Emergency Relief and Recovery
No. 2020-0536

PETITION OF WHITMAN OPERATING CO., LLC
d/b/a CAMP WALT WHITMAN & a.
(Governor's Office for Emergency Relief and Recovery)

Argued: June 17, 2021
Opinion Issued: September 22, 2021

Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Ovide M. Lamontagne and Matthew J. Saldaña on the brief, and Ovide M. Lamontagne orally), for the petitioners.

Office of the Attorney General, (Laura E. B. Lombardi, senior assistant attorney general, on the brief and orally), for the Governor's Office for Emergency Relief and Recovery.

HANTZ MARCONI, J. The petitioners, Whitman Operating Co., LLC d/b/a Camp Walt Whitman, Wicosuta Operating Co., LLC d/b/a Camp Wicosuta, and Winaukee Operating Co., LLC d/b/a Camp Winaukee (collectively, the Camps), challenge a decision of the respondent, the Governor's Office for Emergency Relief and Recovery (the Office for Emergency Relief), to deny their applications for money from the New Hampshire General Assistance and Preservation (GAP) Fund. We affirm.

I.  Facts

The relevant facts follow.  The Governor established the Office for Emergency Relief pursuant to an April 2020 executive order related to the COVID-19 pandemic.  The executive order empowers the Office for Emergency Relief "to assist the Governor and Legislature with and direct State agencies on the management and expenditure of . . . emergency relief funds received under" the Coronavirus Aid, Relief, and Economic Security Act of 2020 (the CARES Act).  See Pub. L. No. 116-136, 134 Stat. 281 (2020).  The executive order establishes a "Legislative Advisory Board" and a "Stakeholder Advisory Board" to work with the Office for Emergency Relief to "develop recommendations for allocation and expenditure of CARES Act emergency relief funds."  Pursuant to the executive order, the Governor reviews the Office for Emergency Relief's recommendations and makes any changes he deems necessary before giving his final approval "for allocation and expenditure [of] . . . CARES Act emergency relief funds."

In July 2020, the Governor authorized the allocation and expenditure of $30 million of CARES Act funds for the GAP Fund "to provide emergency financial relief to New Hampshire businesses and nonprofit organizations impacted by the COVID-19 pandemic."  The Camps applied for GAP funding at the end of July 2020.  Their applications were denied on September 10, 2020.  The form letters notifying the Camps that their applications had been denied stated that "having high liquid assets both personal and business" was one of "[t]he most common reasons" for denying an application.

Shortly thereafter, the Camps submitted a request for rehearing "pursuant to the requirements set forth in New Hampshire Supreme Court Rule 10 and RSA 541:4."  On October 5, 2020, the Office for Emergency Relief declined the request.  The Office explained that "[t]he determination of who will receive awards and the proper amounts from the CARES Act funds are . . . decisions under the Governor's emergency powers and are not subject to rehearing or appeal under RSA 541."  Nonetheless, the Office provided "additional information regarding the GAP Fund," which it hoped would address the Camps' concerns about why they did not receive awards:

> We understand that [the Camps] may have had a financial impact from COVID.  That alone, however, was not the basis for the awards from the GAP Fund.  The State has had to make many hard decisions about criteria for providing funding.  As a result, the State targeted the limited aid available to those entities that do not have other resources to more likely enable them to weather this pandemic crisis.  Of note, the financials [the Camps] submitted . . . indicated that several of the largest percentage owners have tens of millions in net worth and more significantly, tens of millions in cash liquid assets.

2

Thereafter, the Camps submitted a "Second Request for Rehearing Pursuant to RSA 541:4," asking the Office for Emergency Relief to grant their applications for GAP funding. The Office for Emergency Relief responded in an October 21 email that, after carefully considering the Camps' request, its October 5 "response to [the Camps'] original request for rehearing is final," and the Office would not reopen "that decision." The Camps filed the instant appeal on November 20, 2020, under Supreme Court Rule 10 or, alternatively, as a petition for a writ of certiorari under Supreme Court Rule 11.

## II. Analysis

### A. Subject Matter Jurisdiction

Before considering the merits of the Camps' appellate arguments, we address the Office for Emergency Relief's assertion that we lack subject matter jurisdiction. "Subject matter jurisdiction is jurisdiction over the nature of the case and the type of relief sought: the extent to which a court can rule on the conduct of persons or the status of things." Appeal of Cole, 171 N.H. 403, 408 (2018). The Camps contend that we have jurisdiction to decide their case either as an appeal from an administrative proceeding under RSA chapter 541 or as a petition for a writ of certiorari. We conclude that although we lack jurisdiction under RSA chapter 541, we have subject matter jurisdiction to decide this case as a petition for a writ of certiorari.

We first consider whether the Camps' claims may be brought in this court under RSA chapter 541. Under RSA 541:2, appeals may be taken under RSA chapter 541 only "[w]hen so authorized by law." RSA 541:2 (2021); see Appeal of Rye Sch. Dist., 173 N.H. 753, 757 (2020). We have interpreted the phrase "only when so authorized by law" to mean "that the provisions of chapter 541 do not provide an appeal from the determination of every administrative agency in the state." Appeal of Rye Sch. Dist., 173 N.H. at 757 (quotation omitted). "Unless some reference is made to chapter 541 in [a] given statute, an appeal under the provisions of chapter 541 is not authorized by law." Id. (quotation omitted).

The Camps do not identify any statute authorizing an appeal of a decision of the Office for Emergency Relief under RSA chapter 541. Nor are we aware of any such statute. Instead, the Camps argue that "in the absence of an organic statute construing the powers and responsibilities of [the Office for Emergency Relief], . . . RSA 541 should apply to provide aggrieved parties a meaningful avenue of appeal from decisions of [the Office for Emergency Relief]." The Camps assert that "[t]his is particularly true given the constrained internal appeal process which [the Office for Emergency Relief] applied with respect to the grant[s] at issue here." However, as the Office for Emergency Relief correctly observes, and as we have previously held, we have no authority

3

to create equitable exceptions to the jurisdictional requirements of RSA chapter 541. See Appeal of Carreau, 157 N.H. 122, 123-24 (2008) (holding that we could not waive the requirement in RSA 541:6 that an appeal be brought within thirty days after an application for rehearing is denied). As no statute authorizes an appeal under RSA chapter 541 in these circumstances, we have no jurisdiction to review the Office for Emergency Relief's denial of the Camps' applications for GAP funds under that chapter.

We next consider whether we have original jurisdiction to decide this case as a petition for a writ of certiorari. Relying upon law from other jurisdictions concerning their common law writs of certiorari, the Office for Emergency Relief contends that certiorari review is available only when an administrative body acts in a judicial or quasi-judicial capacity. See St. Botolph Citizens Committee v. BRA, 705 N.E.2d 617, 621 (Mass. 1999) (observing, in dicta, that "[c]ertiorari is a limited procedure which may be used to correct substantial errors of law committed by a judicial or quasi-judicial tribunal (but not administrative, political, or legislative decisions)"). The Office for Emergency Relief asserts that we lack jurisdiction here because the Office was not acting in a judicial or quasi-judicial capacity when it denied the Camps' applications for GAP funding. See Appeal of Town of Bethlehem, 154 N.H. 314, 330 (2006) ("An act is judicial in nature if officials are bound to notify, and hear the parties, and can only decide after weighing and considering such evidence and arguments as the parties choose to lay before them." (quotation omitted)).

We have not previously limited certiorari review to judicial or quasi-judicial acts and decline to do so in this case. See DHB v. Town of Pembroke, 152 N.H. 314, 317-18 (2005) (holding that review on certiorari was available to review a planning board's decision not to accept a subdivision application). Our certiorari jurisdiction is confirmed by RSA 490:4. Melton v. Personnel Comm'n, 119 N.H. 272, 277 (1979); see RSA 490:4 (2010) (providing that the supreme court "may issue writs of certiorari . . . to other courts, to corporations, and to individuals"). "Review on certiorari is an extraordinary remedy, usually available only in the absence of a right to appeal, and only at the discretion of the court." Petition of Chase Home for Children, 155 N.H. 528, 532 (2007).

Our cases have allowed "some expansion of the conventional scope of the writ of certiorari." Sinkevich v. Nashua, 97 N.H. 262, 264 (1952). Thus, in DHB, for instance, even though the plaintiff had not sought a writ of certiorari, we concluded that it was available to review the planning board's decision not to accept a subdivision application. DHB, 152 N.H. at 317-18. We explained that "[o]n a sufficient petition, the question is less the form of the petition than whether there is an error correctable by the court." Id. at 318. We further explained that certiorari review was necessary because, otherwise, "a planning board could exercise an unchallengeable veto over even the most meticulous,

4

meritorious and undeniably complete application by simply refusing to accept it." Id. We conclude that certiorari review is available in this case because there is no statutory right of appeal and because, otherwise, the Office for Emergency Relief's decision would be unreviewable.

### B. Standard of Review

Our review of an administrative body's decision on a petition for writ of certiorari entails examining whether the administrative body "acted illegally with respect to jurisdiction, authority or observance of the law or has unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously." Petition of Chase Home for Children, 155 N.H. at 532. "We exercise our power to grant such writs sparingly and only where to do otherwise would result in substantial injustice." Id.

### C. Camps' Arguments

#### 1. Equal Protection

The Camps first argue that denying their applications violated their state and federal constitutional rights to equal protection. See N.H. CONST. pt. I, art. 2; U.S. CONST. amend. XIV. We first address their arguments under the State Constitution and cite federal opinions for guidance only. State v. Ball, 124 N.H. 226, 231-33 (1983).

"The equal protection guarantee is essentially a direction that all persons similarly situated should be treated alike." Lennartz v. Oak Point Assocs., 167 N.H. 459, 462 (2015) (quotation omitted). A classification cannot be arbitrary, but must reasonably promote some proper object of public welfare or interest. Id. In considering an equal protection challenge under our State Constitution, we must first determine the standard of review by examining the purpose and scope of the State-created classification and the individual rights affected. Id. The possible review standards are commonly known as strict scrutiny, intermediate scrutiny, and the rational basis test. Id.

Generally, classifications based upon suspect classes or affecting fundamental rights are subject to strict scrutiny, and classifications involving "important substantive rights" are subject to intermediate scrutiny. In re Sandra H., 150 N.H. 634, 637-38 (2004) (quotation omitted). In all other cases, we employ the rational basis test. Id. Here, the Camps implicitly agree that the rational basis test applies.

We will uphold a classification under rational basis review "if there is a plausible policy reason for [it], the . . . facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its

5

goal is not so attenuated as to render the classification arbitrary or irrational." Deere & Co. v. State of N.H., 168 N.H. 460, 482 (2015) (quotation and brackets omitted). We will not "pronounce a classification unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis." Id. (quotation and brackets omitted). Because the classification is presumed constitutional, the Camps have the burden "to negative every conceivable basis which might support" the classification. Id. (quotation omitted).

The Camps argue that the Office for Emergency Relief treated them differently from similarly situated for-profit organizations based upon the Camps' corporate structure. The Camps describe themselves as limited liability companies "falling under a single[, closely-held] corporate parent." They assert that if they had a different corporate structure, they "presumably would have been approved for GAP funding." They further contend that "similarly situated competitors, including camps with 'wealthy' owners and/or multiple camps, received emergency grants in the hundreds of thousands of dollars, while [the Camps] did not." (Citation omitted.) Although the record before us includes a list of GAP Fund for-profit recipients, the only information about the recipients in the record are their names, addresses, and the amount of GAP funding received.

The Camps' assumption that, if they had a different corporate structure, they would have received GAP funding and their conclusory assertion that certain allegedly similarly situated competitors received GAP funding are insufficient, as a matter of law, to overcome the presumption that the Office for Emergency Relief administered the GAP Fund constitutionally. See Wroblewski v. City of Washburn, 965 F.2d 452, 460 (7th Cir. 1992) ("To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications."). Because the Federal Constitution affords the Camps no greater protection than the State Constitution does under these circumstances, see id., Deere & Co., 168 N.H. at 482, we necessarily reach the same decision under the Federal Constitution as we reach under the State Constitution.

### 2. Due Process

The Camps next argue that the Office for Emergency Relief's decision deprived them of their state and federal rights to procedural and substantive due process. We first address their arguments under the State Constitution and cite federal opinions for guidance only. Ball, 124 N.H. at 231-33.

### a. Procedural Due Process

We engage in a two-part analysis in addressing procedural due process claims: first, we determine whether the individual has an interest that entitles

him or her to due process protection; and second, if such an interest exists, we determine what process is due. Appeal of Nguyen, 170 N.H. 238, 243 (2017). The Camps contend that they have a constitutionally-protected property interest in receiving GAP funds. We disagree.

To have a constitutionally-protected property interest in a government benefit, "a person clearly must have more than an abstract need or desire for it" and "more than a unilateral expectation of it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972); see Short v. School Admin. Unit 16, 136 N.H. 76, 81 (1992). Rather, the person must "have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577. "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005). "Rather, the more circumscribed is the government's discretion (under substantive state or federal law) to withhold a benefit, the more likely that benefit constitutes 'property.'" Clukey v. Town of Camden, 717 F.3d 52, 56 (1st Cir. 2013) (quotation omitted). "Two factors indicating limited discretion are the repeated use of explicitly mandatory language and specific substantive predicates creating guidelines for the official's decision." Connor B. ex rel. Vigurs v. Patrick, 771 F. Supp. 2d 142, 165 (D. Mass. 2011) (quotations omitted).

The Camps do not identify any mandatory language or specific substantive predicates creating guidelines for the Office for Emergency Relief's discretion. Instead, they fault the Office for failing to point to "'permissive language.'" In addition, they concede that the guidance issued by the United States Department of Treasury instructs states to use their "reasonable judgment" in disbursing CARES Act funds. U.S. Dep't of the Treasury, Coronavirus Relief Fund Guidance for State, Territorial, Local, and Tribal Governments, 86 Fed. Reg. 4182, 4183 (Jan. 15, 2021). We note that the same guidance explains that state and local "[g]overnments have discretion to determine what payments are necessary" when creating a grant program to reimburse small businesses "the costs of business interruption caused by required closures." Id. at 4189. Under these circumstances, we conclude that the Camps have failed to establish that they have a constitutionally-protected property right or entitlement to GAP funding. Because the Federal Constitution offers the Camps no greater protection than the State Constitution under these circumstances, see Roth, 408 U.S. at 577; Duffley v. N.H. Interschol. Ath. Assoc., Inc., 122 N.H. 484, 491-92 (1982), we reach the same result under both constitutions.

b. Substantive Due Process

"The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint." State v. Hollenbeck, 164 N.H. 154, 159 (2012) (quotation omitted). "The substantive component of due process provides heightened protection against government

7

interference with certain fundamental rights and liberty interests." Id. (quotation omitted).  When, as in this case, "there is no fundamental right or protected liberty interest at stake, we review the infringement of a right or interest under our rational basis standard of review." Id. at 160.

Under the rational basis test, the party challenging the governmental action at issue has the burden of proof.  Id. at 163.  To meet the test, the governmental action at issue need only be rationally related to a legitimate governmental interest.  Id.

Here, the Office for Emergency Relief asserts that it had a legitimate governmental interest in targeting "the limited aid available to the businesses most in need of the assistance in order to survive the pandemic crisis."  We agree that this is a legitimate governmental interest.  As the Treasury Department's guidance explains, "A program that is aimed at assisting small businesses with the costs of business interruption caused by required closures should be tailored to assist those businesses in need of such assistance." Coronavirus Relief Fund Guidance, 86 Fed. Reg. at 4189.

The Camps have failed to persuade us that denying their applications was not rationally related to this legitimate governmental interest.  Rather, we conclude that the Office for Emergency Relief could have rationally determined that, as it argues, "businesses owned by extremely wealthy individuals with high levels of liquid assets and/or the ability to obtain private financing [would] have the ability to survive the pandemic without the assistance of tax-payer-funded grants from the government."  Accordingly, on this record, we conclude that the Camps have failed to prove that the Office for Emergency Relief violated their rights to substantive due process when it denied their applications for GAP funding.  We reach the same result under the Federal Constitution as we do under the State Constitution because the Federal Constitution offers the Camps no greater protection than does the State Constitution under these circumstances.  See Hollenbeck, 164 N.H. at 164.

### 3.  Arbitrary, Unreasonable, and Capricious Action

Finally, the Camps contend that the Office for Emergency Relief acted arbitrarily, unreasonably, and capriciously "when it disregarded the corporate identity and personhood of [the Camps] and instead applied the personal finances of its individual owners to exclude [the Camps] from GAP funding for which they were clearly eligible."  The Camps argue that by so doing, the Office for Emergency Relief impermissibly "pierc[ed] the corporate veil" and violated Citizens United v. Federal Election Commission, 558 U.S. 310 (2010).  We disagree.

Here, the Office for Emergency Relief was bestowing a government benefit.  It did not "pierce the corporate veil" so as to hold individual owners

8

personally liable for a corporate action or debt.  See Terren v. Butler, 134 N.H. 635, 639-40 (1991) (explaining the piercing the corporate veil doctrine).  Nor did it deprive a corporation, on the basis of its corporate identity, a legal entitlement or constitutional right.  See Citizens United, 558 U.S. at 365 (holding that "the Government may not suppress political speech on the basis of the speaker's corporate identity").  In light of the limited CARES Act funds available and the Treasury Department's guidance, we cannot conclude, based upon the record submitted, that the Office for Emergency Relief acted "arbitrarily, unreasonably, or capriciously" when it denied the Camps' applications for GAP funds.  Petition of Chase Home for Children, 155 N.H. at 532.  Accordingly, we uphold that decision.

Affirmed.


BASSETT and DONOVAN, JJ., concurred.