Original
No. 2010-024

PETITION OF JULI GEORGE

Argued: June 23, 2010
Opinion Issued: September 17, 2010

*Thomas G. Van Houten,* of Springvale, Maine, by brief and orally, for the plaintiff.

*Bouchard, Kleinman & Wright, P.A.,* of Hampton (*Paul B. Kleinman* and *Sabin R. Maxwell* on the brief, and *Mr. Kleinman* orally), for defendant Merrimack River Medical Services, Inc. d/b/a Community Substance Abuse Centers.

Amy Steadman, *pro se,* filed no brief.

DALIANIS, J. In this petition for original jurisdiction, the plaintiff, Juli George, seeks review of the order of the Superior Court (*Brown,* J.) granting the motion of defendant Merrimack River Medical Services, Inc. d/b/a Community Substance Abuse Centers (CSAC) to refer her claim against it to a pretrial screening panel for medical injury claims (medical injury screening panel) pursuant to RSA chapter 519-B. We affirm.

In her 2009 writ against defendants Amy Steadman and CSAC, the plaintiff alleged that Steadman's vehicle crossed the centerline and struck her vehicle head-on, causing her to suffer "grievous injuries." The plaintiff alleged that the accident happened because Steadman fell asleep at the wheel as a result of having been given methadone at CSAC. The plaintiff alleged that Steadman was negligent for failing to drive safely and that CSAC was negligent for allowing Steadman to leave the facility and drive despite it being reasonably foreseeable that her driving ability was impaired and that her impairment posed a substantial risk to third parties.

In her claim against CSAC, the plaintiff specifically alleges that CSAC: (1) failed to monitor Steadman properly and/or supervise her while she was under the influence of methadone; (2) failed to determine the proper dosage of methadone that should have been given to her; (3) failed to implement a proper procedure for monitoring patients after they received methadone that would have prevented Steadman from leaving the clinic in an impaired condition; (4) failed to intervene and prevent Steadman from leaving the clinic while she was under the influence of methadone; and (5) failed to monitor adequately whether Steadman was affected by other factors, such as drugs or alcohol, which might have exacerbated the effect of methadone.

The plaintiff alleges that as a result of CSAC's negligent treatment of Steadman, Steadman succumbed to the effects of methadone and fell asleep at the wheel. Because Steadman was asleep, her car crossed the centerline and struck the plaintiff's car, causing her to suffer injuries.

CSAC moved to defer a scheduled structuring conference and refer the plaintiff's claim against it to a screening panel for medical injury claims pursuant to RSA chapter 519-B. The court granted this motion and, subsequently, denied the plaintiff's motion to reconsider. The plaintiff moved for leave to file an interlocutory appeal of the trial court's ruling, *see* SUP. CT. R. 8, which the trial court denied. This petition for original jurisdiction followed.

The narrow question before us is whether the plaintiff's claim against CSAC is an "action for medical injury" within the meaning of RSA 507-E:1, I, III (2010), and, thus, must be presented to a medical injury screening panel. *See* RSA ch. 519-B (2007). Given that the parties have had an opportunity to litigate only whether the trial court erred by referring the plaintiff's claim against CSAC to a medical injury screening panel, we confine ourselves to this narrow issue. In particular, we express no opinion as to the viability of the plaintiff's claims.

The plaintiff argues that her claim against CSAC is not an "action for medical injury" because she is not a patient of CSAC. We conclude that the plaintiff's claim against CSAC is an "action for medical injury" because, to recover on it, she must prove that CSAC was negligent in its care, treatment and supervision of Steadman. We further conclude that the plain language of the pertinent statutes does not require that an "action for medical injury" be brought by a patient or that the "medical injury" at issue be suffered by a patient.

Resolving the issues in this petition requires that we engage in statutory interpretation, which presents a question of law that we review *de novo*. *Petition of Farmington Teachers Assoc.*, 158 N.H. 453, 456 (2009). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.*

The medical injury screening panel statute provides that, "[u]pon the entry of a medical injury case," RSA 519-B:3, II(a), a medical injury screening panel shall be convened, and, "no later than 6 months from the return date . . . all the relevant medical and provider records necessary to a determination by the panel" shall be forwarded to the panel, RSA 519-B:4, II. The panel's determination is nonbinding, unless the parties

agree otherwise. *See* RSA 519-B:4, IV. The parties may also agree to bypass the panel "for any reason." *Id.*

Following a hearing, the panel must answer three questions: (1) "[w]hether the acts or omissions complained of constitute a deviation from the applicable standard of care by the medical care provider charged with that care"; (2) "[w]hether the acts or omissions complained of proximately caused the injury complained of"; and (3) "[i]f fault on the part of the medical care provider is found, whether any fault on the part of the patient was equal to or greater than the fault on the part of the provider." RSA 519-B:6, I. If the panel unanimously finds "in the plaintiff's favor, the defendant shall promptly enter into negotiations to pay the claim or admit liability" and if the claim goes to trial, the panel's findings are admissible at trial. RSA 519-B:10, I; *see* RSA 519-B:8, I(b). Conversely, if the panel unanimously finds "in the defendant's favor, the plaintiff shall release the claim or claims based on the findings, without payment, or be subject to the admissibility of those findings" at trial. RSA 519-B:10, II; *see* RSA 519-B:8, I(c).

The medical injury screening panel statute specifically incorporates the definitions contained in RSA chapter 507-E for "[a]ction for medical injury," "[m]edical care provider," and "[m]edical injury." RSA 519-B:2. The parties agree that CSAC is a "medical care provider" within the meaning of RSA 507-E:1, II. An "[a]ction for medical injury" is "any action against a medical care provider, whether based in tort, contract or otherwise, to recover damages on account of medical injury." RSA 507-E:1, I. RSA 507-E:1, III defines a medical injury as:

> any adverse, untoward or undesired consequences arising out of or sustained in the course of professional services rendered by a medical care provider, whether resulting from negligence, error, or omission in the performance of such services; from rendition of such services without informed consent or in breach of warranty or in violation of contract; from failure to diagnose; from premature abandonment of a patient or a course of treatment; from failure properly to maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services.

■ The plaintiff's allegations against CSAC fit comfortably within this definition. The plaintiff has alleged that CSAC was negligent in the professional services it rendered to Steadman because it failed to: monitor and/or supervise her while she was under the influence of methadone, determine the right amount of methadone to give her, determine whether she was under the influence of other drugs or alcohol before giving her

methadone, and prevent her from leaving the clinic when she was impaired by methadone. The plaintiff has also alleged that because of CSAC's negligent treatment of Steadman, the plaintiff suffered adverse consequences. She contends that because of CSAC's negligent treatment of Steadman, Steadman fell asleep at the wheel and crashed into the plaintiff's car, causing the plaintiff to suffer injuries. Because the plaintiff cannot recover on her claim against CSAC unless she proves that CSAC was negligent in its treatment of Steadman, it is an "[a]ction for medical injury" and is subject to the medical injury screening panel requirement.

Transferring the plaintiff's claim against CSAC to a medical injury screening panel is entirely consistent with the purposes of the medical injury screening panel statute, which are to "contain the costs of the medical injury reparations system and . . . promote availability and affordability of insurance against liability for medical injury." RSA 519-B:1, I. The presentation of medical injury claims to a screening panel "is intended to help identify both meritorious and non-meritorious claims without the delay and expense of a court trial" and to "encourage the prompt resolution of claims." *Id.* The medical injury screening panel furthers this goal by reviewing whether the acts or omissions of the medical care provider "constitute a deviation from the applicable standard of care," whether they "proximately caused the injury complained of," and whether the patient bears any responsibility for the injuries. RSA 519-B:6, I. When, as in this case, medical judgment is at issue, the medical injury screening panel, which includes a health care practitioner, *see* RSA 519-B:3, II(c)(2), applies its expertise to decide whether there is sufficient evidence for the matter to proceed. *See Vasa v. Compass Medical, P.C.*, 921 N.E.2d 963, 966 (Mass. 2010) (construing Massachusetts statute). Here, resolving the plaintiff's claim against CSAC will require determining whether CSAC's acts or omissions toward Steadman deviated from the applicable professional standard of care. *See* RSA 519-B:6, I(a).

The third-party nature of the plaintiff's claim against CSAC does not remove it from the scope of RSA chapter 519-B. *See Vasa*, 921 N.E.2d at 966. The medical injury screening panel statute contains no language limiting its coverage to suits brought by recipients of medical treatment. The statute provides that cases shall be presented to the panel by the "claimant" or "plaintiff" and does not require the "claimant" or "plaintiff" to be the "patient." RSA 519-B:5, I(a), :6. As the Massachusetts Supreme Judicial Court concluded in a case involving similar facts, "[t]he identity of the plaintiff does not affect whether the defendant's medical judgment is at issue." *Vasa*, 921 N.E.2d at 967. "It is the subject matter of the claim and the identity of the defendant" that determine whether referral to a medical

injury screening panel is required. *Id.* (holding that claim brought by wife of deceased motorist that health care provider's failure to warn patient about effects of prescription medication and failure to advise patient not to drive was properly transferred to medical malpractice tribunal for screening); *see Santos v. Kim*, 706 N.E.2d 658, 660 (Mass. 1999) (determining that Massachusetts medical malpractice tribunal statute "does not require the existence of a doctor-patient relationship as a predicate for its application"). Here, the plaintiff's claim against CSAC involves the medical treatment CSAC provided to Steadman. Accordingly, the plaintiff's claim is subject to the medical injury screening statute. *See Vasa*, 921 N.E.2d at 967.

Similarly, the definition of "medical injury" does not require the person injured to be the patient. RSA 507-E:1, III defines a "medical injury" as "*any* adverse, untoward or undesired consequences arising out of or sustained in the course of professional services rendered by a medical care provider." (Emphasis added.) Nothing in this language limits a medical injury to an injury suffered by a patient. Indeed, as we noted in *Lord v. Lovett*, 146 N.H. 232, 237 (2001), the definition of "medical injury" is broad enough "to cover *all conceivable lawsuits* against medical care providers." (Quotation omitted; emphasis added.)

In this case, the plaintiff's claims are for "adverse, untoward or undesired consequences" that "aris[e] out of" professional services rendered by a medical care provider, that is, the failure to monitor the patient's treatment and determine the right dosage of methadone to give her. Therefore, applying this statutory definition to the plaintiff's claims complies with legislative intent, as set forth in the plain language of the definition itself. Had the legislature intended to limit the definition to injuries sustained by patients, it could have so stated. *See, e.g.*, Ala. Code § 6-5-481 (9) (2005) (defining medical liability as finding that health care provider breached applicable standard of care and "such failure was the proximate cause of the injury complained of, resulting in damage to the patient"). We cannot add words to RSA chapter 519-B that the legislature did not see fit to include. *Petition of Farmington Teachers Assoc.*, 158 N.H. at 456.

The plaintiff argues that the fact that the medical injury screening panel must make a finding about whether, if the medical care provider is at fault, the fault of the "patient" is equal to or greater than the medical care provider's fault, *see* RSA 519-B:6, I(c), indicates that the legislature intended that the medical injury screening panel statute apply only to claims brought by patients. We agree with CSAC that this language "should not be interpreted to override the overall purpose and broad scope

of the statutory scheme established by RSA [chapter] 507-E and RSA [chapter] 519-B." As CSAC aptly notes: "[T]he statute's goals are ensured only if *all* actions for medical injury, *i.e.*, claims of professional negligence, are subjected to the screening panel process." Exempting an entire class of claims from the process would contravene the broad definition of "medical injury," which the legislature specifically incorporated into the medical injury screening panel statute, and would conflict with the legislature's stated goal of containing "the costs of the medical injury reparations system" and promoting "availability and affordability of insurance against liability for medical injury." RSA 519-B:1, I.

The plaintiff also contends that because the screening panels "are charged . . . with determining only whether the *patient* bears more or less fault than the medical care provider," the panels "have neither the duty nor the authority to examine the comparative fault of any non-patient claimant." Accordingly, the plaintiff argues, "if the law is read to apply to claimants other than patients, the [screening panels are] required to leave unaddressed the key issue of comparative fault in its analysis of the merits of a non-patient's claim."

The fact that the screening panels are charged with finding only whether the patient bears more or less fault than the medical care provider is entirely consistent with allowing the panels to address the "medical injury" claims of non-patients, such as the plaintiff. The viability of the plaintiff's "medical injury" claims depends upon whether the medical care provider is chargeable with negligence toward the patient.

■ Although we conclude that the statute requires medical screening panels to review claims for medical injury by non-patients, we express no opinion as to whether a medical care provider's negligent treatment of a patient gives rise, generally, to a duty to non-patients, or whether, in particular, CSAC's alleged negligent treatment of Steadman gave rise to a duty to the plaintiff. Courts around the country have reached different conclusions in factually similar cases. *Compare Cheeks v. Dorsey*, 846 So. 2d 1169, 1173 (Fla. Dist. Ct. App.) (physician has duty to unidentifiable third parties who may be injured as a result of physician's failure to take proper precautions when administering drug, which, when combined with other drugs or alcohol, may severely impair patient), *review denied*, 859 So. 2d 513 (Fla. 2003), *Joy v. Eastern Maine Medical Center*, 529 A.2d 1364, 1366 (Me. 1987) (doctor who knows or reasonably should know that patient's ability to drive has been affected has duty to driving public and to patient to warn patient of such fact), *Wilschinsky v. Medina*, 775 P.2d 713, 717 (N.M. 1989) (physician owes duty to person injured by patients driving automobiles from physician's office when patient has just been injected

with drugs known to affect judgment and driving ability), *Hardee v. Bio-Medical Applications of SC*, 636 S.E.2d 629, 631-32 (S.C. 2006) (medical provider who provides treatment that it knows may detrimentally affect patient's capacities and abilities owes duty to prevent harm to patients and to reasonably foreseeable third parties by warning patient of risks and effects before administering treatment), *and Burroughs v. Magee*, 118 S.W.3d 323, 331-33 (Tenn. 2003) (physician has duty of care to motorists injured in collision with truck to warn truck driver that drugs may adversely affect his ability to safely operate motor vehicle), *with McKenzie v. Hawai'i Permanente Med. Group*, 47 P.3d 1209, 1221-22 (Haw. 2002) (physician owed no duty to non-patient third parties injured as a result of physician's negligent prescribing decisions), *Lester ex rel. Mavrogenis v. Hall*, 970 P.2d 590, 592-93 (N.M. 1998) (physician owed no duty to third party injured in car accident with patient when physician last treated patient five days before accident and exercised no supervision or control over patient's ingestion of medication), *and Rebollal v. Payne*, 536 N.Y.S.2d 147, 148 (App. Div. 1988) (operator of methadone clinic has no duty to control travel activities of methadone patient giving rise to liability for accident to third parties). The parties have not yet had an opportunity to litigate this issue, and, thus, it is not properly before us.

■ The plaintiff next argues that applying the statutory definition of "medical injury" to claimants who are not patients of the defendant medical care provider violates the Equal Protection Clauses of the State and Federal Constitutions. Her constitutional claims are premised upon her assumption that only patients may assert claims for "medical injury" under RSA 507-E:1, III, an assumption with which we have already disagreed. Because the plaintiff's constitutional arguments rest upon a faulty premise, we reject them.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.