Original
No. 2011-754

PETITION OF SOUTHERN NEW HAMPSHIRE MEDICAL CENTER & a.

Argued: September 12, 2012
Opinion Issued: October 30, 2012

322

*Nixon, Vogelman, Barry, Slawsky & Simoneau*, of Manchester (*David P. Slawsky* on the brief and orally), and *Christine M. Smith*, of Manchester, by brief, for the plaintiff.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*W. Kirk Abbott, Jr. & a.* on the brief, and *Martin P. Honigberg* orally), for the defendants.

*Douglas, Leonard & Garvey, P.C.*, of Concord (*Benjamin T. King* on the brief), and *Center for Constitutional Litigation, P.C.*, of Washington, D.C. (*Jeffrey R. White* on the brief), for American Association for Justice and New Hampshire Association for Justice, as *amici curiae*.

*Rath, Young and Pignatelli, P.C.*, of Nashua (*Michael A. Pignatelli* and *Kenneth C. Bartholomew* on the brief), for New Hampshire Medical Society, Maine Medical Association, Vermont Medical Society, New Hampshire Hospital Association, and American Medical Association, as *amici curiae*.

DALIANIS, C.J. In this petition for original jurisdiction, *see* SUP. CT. R. 11, the defendants, Southern New Hampshire Medical Center (SNHMC) and Bernard Bettencourt, Jr., D.O., seek review of the decision of the Superior Court (*Nicolosi,* J.) that three provisions of the statute governing medical injury screening panels, RSA 519-B:8-:10 (2007), violate the Separation of Powers Clause of the State Constitution, *see* N.H. CONST. pt. I, art. 37. We conclude that in so ruling, the trial court erred.

Nonetheless, we affirm portions of the trial court's decision, albeit on alternative grounds. *See Sherryland v. Snuffer*, 150 N.H. 262, 267 (2003) ("When a trial court reaches the correct result, but on mistaken grounds, this court will sustain the decision if there are valid alternative grounds to support it."). Specifically, we hold that the plaintiff, the Estate of Sheila Parker by Wendy Roystan, Administratrix, prevails on its assertion that portions of the statutes at issue violate a plaintiff's state constitutional right to a jury trial, *see* N.H. CONST. pt. I, art. 20.

■ ■ Although we granted the parties' request to brief additional arguments regarding the constitutionality of the provisions, we decline to address them because the plaintiff did not argue them in its original motion to the trial court, and they are neither preserved nor ripe for our review. *See Town of Atkinson v. Malborn Realty Trust*, 164 N.H. 62, 69 (2012) (declining to address appellants' procedural due process arguments because they were not raised first in the trial court); *Petition of State of N.H. (State v. Fischer)*, 152 N.H. 205, 210 (2005) ("A case may lack ripeness . . . even when it involves a final action presenting a purely legal question" because the contested action does not impose an impact "on the parties sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." (quotations and ellipsis omitted)). In effect, the parties would have us issue an advisory opinion addressing these other arguments so as to benefit future litigants. This we decline to do. *Town of Orford v. N.H. Air Resources Comm.*, 128 N.H. 539, 542 (1986) ("[T]he judicial power ordinarily does not include the power to issue advisory opinions.").

## I. Brief Background

The parties do not dispute the following facts for the purposes of this appeal. The underlying superior court action is the plaintiff's medical malpractice lawsuit brought against the defendants and others. Pursuant to RSA chapter 519-B, the parties participated in a two-day medical injury screening panel hearing in December 2010. Following the hearing, the panel unanimously found that the defendants were not negligent in that their acts or omissions did not "constitute a deviation from the applicable standard of care."

Thereafter, the plaintiff filed a motion, asking the court to find that RSA 519-B:8-:10 violate Part I, Articles 20 and 37 of the State Constitution. The trial court granted the motion on separation of powers grounds, and the defendants requested permission to file an interlocutory appeal. When the trial court denied this request, the defendants filed the instant petition for original jurisdiction.

## II. Discussion

### A. Separation of Powers

■ The defendants first contend that the superior court erroneously determined that RSA 519-B:8-:10 violate the Separation of Powers Clause of the State Constitution. *See* N.H. CONST. pt. I, art. 37. This is a question of law that we review *de novo. See Cloutier v. State*, 163 N.H. 445, 451 (2012). "In reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds." *New Hampshire Health Care Assoc. v. Governor*, 161 N.H. 378, 385 (2011) (quotation omitted). "This means that we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution." *Id.* (quotation omitted). "It also means that when doubts exist as to the constitutionality of a statute, those doubts must be resolved in favor of its constitutionality." *Id.* (quotation and brackets omitted).

Resolving the issues before us also requires interpreting RSA 519-B:8-:10 and related provisions, which presents another question of law that we review *de novo. Petition of George*, 160 N.H. 699, 702 (2010). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.*

### 1. Medical Injury Screening Panel Statute

The medical injury screening panel statute provides that, "[u]pon the entry of a medical injury case," RSA 519-B:3, II(a) (2007), a medical injury screening panel shall be convened, and, "no later than 6 months from the return date . . . all the relevant medical and provider records necessary to a determination by the panel" shall be forwarded to the panel, RSA 519-B:4, II (2007). *See Petition of George*, 160 N.H. at 702. The panel's determination is nonbinding, unless the parties agree otherwise. *Id.* at 702-03; *see* RSA 519-B:4, IV (2007). The parties may also agree to bypass the panel "for any reason." RSA 519-B:4, IV.

Following a hearing, the panel must answer three questions: (1) "[w]hether the acts or omissions complained of constitute a deviation from the applicable standard of care by the medical care provider charged with that care"; (2) "[w]hether the acts or omissions complained of proximately caused the injury complained of"; and (3) "[i]f fault on the part of the medical care provider is found, whether any fault on the part of the patient

was *equal* to or greater than the fault on the part of the provider." RSA 519-B:6, I (2007) (emphasis added); *Petition of George*, 160 N.H. at 703. *But see* RSA 507:7-d (2010) ("Contributory fault shall not bar recovery in an action by any plaintiff . . . to recover damages in tort . . . , if such fault was not greater than the fault of the defendant . . . .").

The plaintiff challenges RSA 519-B:8-:10. Pursuant to RSA 519-B:8, I(a), the panel proceedings, including its final determination, "shall be treated as private and confidential by the panel and the parties to the claim." "The findings and other writings of the panel and any evidence and statements made by a party or a party's representative" at the panel hearing "are not admissible in court" and "shall not be submitted or used for any purpose in a subsequent trial," except that: (1) "[a]ny testimony or writings made under oath" at the panel hearing may be used in a subsequent proceeding for impeachment purposes; and (2) the party who made the statement or presented evidence may agree to the submission, use or disclosure of that statement or evidence. RSA 519-B:8, I(a)(1), (2). Additionally, under RSA 519-B:8, III, "[t]he deliberations and discussion of the panel and the testimony of any expert . . . shall be privileged and confidential, and no such person may be asked or compelled to testify at a later court proceeding concerning the deliberations, discussions, findings, or expert testimony or opinions expressed during the panel hearing, unless by the party who called and presented the nonparty expert," except as may be necessary to prove fraud.

Under RSA 519-B:10, if the panel unanimously finds "in the plaintiff's favor, the defendant shall promptly enter into negotiations to pay the claim or admit liability" and if the claim goes to trial, the panel's findings are admissible at trial. RSA 519-B:10, I; *see* RSA 519-B:8, I(b). Conversely, if the panel unanimously finds "in the defendant's favor, the plaintiff shall release the claim or claims based on the findings, without payment, or be subject to the admissibility of those findings" at trial. RSA 519-B:10, II; *see* RSA 519-B:8, I(c).

RSA 519-B:9 sets forth the instructions that the court must give the jury when panel findings are admitted into evidence and, again, before the court submits the case to the jury for decision. RSA 519-B:9, II. The purpose of these mandatory jury instructions is "to provide a basis for the jury to understand the nature of the panel findings and to put the panel findings in context in evaluating all of the evidence presented at the trial." RSA 519-B:9, I. Specifically, the court must instruct the jury:

> (a) The panel process is a preliminary procedural step through which malpractice claims proceed.
>
> (b) The panel in this case consisted of (insert the name and identity of the members).

(c) The panel conducts a summary hearing and is not bound by the rules of evidence.

(d) The hearing is not a substitute for a full trial and may or may not have included all of the evidence that is presented at the trial.

(e) The jury is not bound by the findings of the panel and it is the jurors' duty to reach their own conclusions based on all of the evidence presented to them.

(f) The panel proceedings are privileged and confidential. Consequently, the parties may not introduce panel documents or present witnesses to testify about the panel proceedings, and they may not comment on the panel findings or proceedings except as provided in subparagraphs (a) through (e).

*Id.*

### 2. Analysis

■ Our first task is to determine the scope of the plaintiff's challenge to RSA 519-B:8-:10. *See State v. Hollenbeck,* 164 N.H. 154, 158 (2012). "An appellant may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both." *Id.* (quotation omitted). "A facial challenge is a head-on attack of a legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications." *Id.* (quotation omitted). To prevail on a facial challenge to a statute, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *Id.* (quotation omitted). "[A]n as-applied challenge," on the other hand, "concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case." *Id.* (quotations omitted).

The plaintiff has brought a facial challenge to RSA 519-B:8-:10. Thus, to prevail, the plaintiff must demonstrate that there is no set of circumstances under which these provisions might be valid. *Id.*

■ Next, we must determine whether, as the plaintiff asserts, RSA 519-B:8-:10 violate the Separation of Powers Clause of the State Constitution, which provides:

> In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity.

N.H. CONST. pt. I, art. 37. Part I, Article 37 "contemplates no absolute fixation and rigidity of powers between the three great departments of government." *New Hampshire Health Care Assoc.*, 161 N.H. at 386 (quotation omitted). Instead, it expressly recognizes that, as a practical matter, "there must be some overlapping" among the three branches of government and that "the erection of impenetrable barriers" among them is not required. *Id.* (quotations omitted). Thus, the Separation of Powers Clause "is violated only when one branch usurps an essential power of another." *Id.* (quotation omitted). We have held that one branch "usurps" an essential power of another branch when it "defeat[s] or materially impair[s] the inherent functions" of the other branch. *State v. Merrill*, 160 N.H. 467, 472 (2010) (quotation omitted).

The plaintiff first argues that RSA 519-B:8-:10 violate the separation of powers doctrine because they are akin to evidentiary rules, which the plaintiff views as the exclusive province of the judiciary. For the purpose of this discussion, we assume, without deciding, that the plaintiff's characterization of these provisions is correct. *See State ex. rel. Strykowski v. Wilkie*, 261 N.W.2d 434, 451 (Wis. 1978) (viewing statutory admissibility of medical malpractice screening panel's findings as "in essence, a rule of evidence"); *accord Comiskey v. Arlen*, 390 N.Y.S.2d 122, 126 (App. Div. 1976), *aff'd*, 372 N.E.2d 34 (N.Y. 1977); *Eastin v. Broomfield*, 570 P.2d 744, 748 (Ariz. 1977).

In making this argument, the plaintiff relies primarily upon *Opinion of the Justices (Prior Sexual Assault Evidence)*, 141 N.H. 562 (1997) (*PSAE*). In *PSAE*, the Senate asked this court to issue an advisory opinion regarding whether a proposed statute, which would have created a rebuttable presumption that evidence of a defendant's prior sexual assaults was admissible at trial, violated the Separation of Powers Clause. *PSAE*, 141 N.H. at 566-68. The justices opined that the proposed statute would violate Part I, Article 37 because it conflicted with New Hampshire Rule of Evidence 404(b). *Id.* at 578. The justices explained that substance was "a legitimate subject of legislative action," and procedure was "a subject under the exclusive jurisdiction of the courts." *Id.* at 571. The justices defined substance as "the rights and duties which people live by" and procedure as "the means and methods by which those rights and duties are to be protected and enforced." *Id.* at 572 (quotations omitted). Using this framework, the justices concluded that it was the exclusive province of the judiciary to adopt or modify a rule of evidence regarding the admissibility of other crime evidence in a criminal trial. *See id.* at 574-78; *see also* Lynn, *Judicial Rule-Making and the Separation of Powers in New Hampshire: The Need for Constitutional Reform*, 42 N.H.B.J. 44, 46 (March 2001).

■ ■ "Because [*PSAE*] was an advisory opinion . . . , rather than a litigated case, the opinion does not constitute binding precedent." *State v. Ploof*, 162 N.H. 609, 625 (2011); *cf. Opinion of the Justices (Public Use of Coastal Beaches)*, 139 N.H. 82, 94-95 (1994) (an opinion of the justices "on proposed legislation is not binding upon the court in the event the proposed legislation should become law and a case should arise requiring its construction"). Moreover, we believe that the language used in *PSAE* was unnecessarily broad. As numerous commentators have observed, the suggestion in *PSAE* "that [the court's] rulemaking authority regarding evidentiary . . . rules is exclusive is inconsistent with prior precedent which suggests . . . that th[is] area . . . is one in which the Judiciary and Legislature share concurrent authority, absent constitutional consider-ations, such as impairment of the court's ability to function." McNamara, *The Separation of Powers Principle and the Role of the Courts in New Hampshire*, 42 N.H.B.J. 66, 82 (June 2001); *see, e.g., State v. LaPointe*, 81 N.H. 227, 234-39 (1924) (although legislature may not enact law that directs how jury is to weigh evidence, it may enact provision allowing jury to consider certain facts); *King v. Hopkins*, 57 N.H. 334, 351 (1876) (recog-nizing that legislature may change evidentiary rules provided that legisla-ture does not infringe upon constitutional right to jury); *cf. State v. Rollins-Ercolino*, 149 N.H. 336, 342-43 (2003) (statute may not unconstitu-tionally shift burden of proof in criminal case to defendant).

■ Although Part II, Article 73-a provides, in pertinent part, that the chief justice of the supreme court "shall, with the concurrence of a majority of the supreme court justices, make rules governing . . . the practice and procedure to be followed in all such courts," this provision does not state or imply that the authority to adopt evidentiary rules belongs exclusively to the judiciary. This provision merely endorsed the judiciary's inherent authority to adopt such rules, *see Nassif Realty Corp. v. National Fire Ins. Co.*, 107 N.H. 267, 268-69 (1966), and was not intended to divest the legislature of its concurrent authority to enact statutes on this subject.

■ Statements of the delegates at the 1974 constitutional convention confirm this interpretation. "We consider a delegate's statements in determining the meaning of an amendment if they interpret the amend-ment's language in accordance with its plain and common meaning while being reflective of its known purpose or object." *Bd. of Trustees, N.H. Judicial Ret. Plan v. Sec'y of State*, 161 N.H. 49, 55 (2010) (quotation omitted). During discussions about the constitutional amendment, the following exchange occurred:

> Del. GROSS of Concord: The last sentence of the proposed amendment reads: "The rules so promulgated shall have the force

and effect of law." Could you tell us what effect that sentence would have on the Legislature's ability to provide by statute for court procedures in the future?

Del. NIGHSWANDER [of Gilford]: It is my understanding that the courts now have rule-making power. The rules which they make for the orderly procedure within the courts are within the jurisdiction of the judiciary. All this does is to unify the place where the rules are promulgated; that is, in the Supreme Court. At the present time, for example, the Superior Court makes rules for themselves and then they submit them to the Supreme Court for approval. But I don't think it changes the general principle that the rules of court, as far as procedure is concerned, have the effect of law.

Del. GROSS: Is my understanding correct that this amendment, if adopted, would not deprive the Legislature of its right that it presently has, to regulate court procedure by statute?

Del. NIGHSWANDER: I would think that any power that they now have, they would still have.

JOURNAL OF THE CONSTITUTIONAL CONVENTION 261-62 (1974). Thus, delegates voting on the amendment understood that it did not deprive the legislature of its concurrent authority to pass laws concerning evidentiary rules.

Additionally, citizens voting on the 1974 amendment were not informed that the authority of the judiciary to create procedural rules was intended to be exclusive. The ballot question submitted to voters merely asked: "Are you in favor of amending the constitution to provide that the chief justice of the supreme court shall be the administrative head of the state courts, and that he shall, with the concurrence of a majority of the supreme court justices, make rules governing procedure in the courts?" *Id.* at 536.

█ Because we view our authority to make evidentiary rules as coextensive with the legislature's, we disagree with the plaintiff that RSA 519-B:8-:10 violate the Separation of Powers Clause merely because they are akin to evidentiary rules. In so holding, we join other courts in recognizing that the legislature has the authority to enact laws affecting evidentiary rules. *See Irish v. Gimbel*, 691 A.2d 664, 672 (Me. 1997); *Barrett v. Baird*, 908 P.2d 689, 700 (Nev. 1995), *overruled on other grounds by Lioce v. Cohen*, 174 P.3d 970 (Nev. 2008); *Comiskey*, 390 N.Y.S.2d at 126. Of course, while the legislature shares authority with the judiciary to regulate

court procedure, there obviously are limits on how far the legislature may go. The legislature may not, for example, enact procedural statutes that compromise the core adjudicatory functions of the judiciary to resolve cases fairly and impartially and to protect the constitutional rights of all persons who come before the courts.

The plaintiff next focuses solely upon RSA 519-B:10, arguing that this provision violates the separation of powers doctrine because it requires a trial court to admit the panel's findings, and, thus, materially impairs the court's ability to determine the evidence a jury may fairly consider. This argument is based upon the mistaken premise that the legislature is without authority to deem certain evidence relevant and admissible. To the contrary, the legislature has the authority to deem certain evidence relevant and admissible because, like the judiciary, it has the authority to create evidentiary rules.

The plaintiff next contends that the mandatory jury instruction set forth in RSA 519-B:9 violates the separation of powers doctrine because it conflicts with New Hampshire Model Civil Jury Instruction 2.2. The plaintiff mistakenly refers to the model instruction as a "Model Rule"; however, we have not adopted the model instructions as court rules. *Cf. State v. Leveille*, 160 N.H. 630, 633 (2010) (recommending that trial courts use model jury instructions in criminal cases). Moreover, to the extent that the plaintiff implies that it is the exclusive province of the judiciary to determine the proper wording of jury instructions, we disagree. This is an area in which the judiciary and legislature have shared authority. *See Edwards v. State*, 10 S.W.3d 699, 704 (Tex. Ct. App. 1999); *cf. Gibbs v. Prior*, 107 N.H. 218, 220-21 (1966).

Although the plaintiff also argues that the confidentiality provisions contained in RSA 519-B:8 "implicitly overrule the expansive right of access to court records repeatedly honored by the courts of the nation and of this state," we decline to address this argument because the plaintiff did not include it in the original petition to the trial court.

*B. Right to Jury Trial*

Having concluded that RSA 519-B:8-:10 do not violate the separation of powers doctrine, we next consider whether they violate a plaintiff's state constitutional right to a jury trial. Under Part I, Article 20 of the State Constitution, the right to a jury trial in civil causes "shall be held sacred." N.H. CONST. pt. I, art. 20; *Murphy & Sons, Inc. v. Peters*, 95 N.H. 275, 276 (1948). The right to a jury trial extends to all cases for which the right existed when the constitution was adopted in 1784. *SNCR Corp. v. Greene*, 152 N.H. 223, 224 (2005). Here, there is no dispute that the plaintiff had the

right under Part I, Article 20 to try her medical injury claim to a jury. *See Jones v. Chase*, 110 N.H. 406, 408 (1970) (plaintiffs bringing negligence actions at law for damages are entitled to have issues tried to a jury).

The plaintiff first argues that the admission of the hearing panel's findings under RSA 519-B:10 and RSA 519-B:8, I(b), (c) penalizes "the party who insists on exercising his right to a jury trial despite the negative panel findings," and, thus, violates the right to a jury trial. The plaintiff does not argue that the medical screening process itself, as an alternative dispute resolution process, violates the jury trial right. Rather, the plaintiff contends that the admission of the hearing panel's findings acts as a "penalty," which unconstitutionally infringes upon a plaintiff's jury trial right.

 "A statute will unconstitutionally restrict the right to a jury trial when that right is burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable." *Zamora v. Price*, 213 P.3d 490, 493 (Nev. 2009) (quotation omitted); *see Parker v. Children's Hospital of Philadelphia*, 394 A.2d 932, 942 (Pa. 1978). We reject the plaintiff's assertion that the right to a jury trial is "practically unavailable" merely because the panel's findings are admissible at a subsequent trial. *Zamora*, 213 P.3d. at 494; *see Hines v. Elkhart General Hospital*, 465 F. Supp. 421, 426-28 (N.D. Ind.) (rejecting assertion that admissibility of medical review panel opinion impermissibly burdens jury trial right), *aff'd*, 603 F.2d 646 (7th Cir. 1979); *Parker*, 394 A.2d at 942 (admissibility of arbitration panel's decision at subsequent trial not shown to infringe upon jury trial right). Here, RSA 519-B:10 requires the non-binding unanimous findings of the panel to be admitted for consideration by the jury at any trial *de novo. See Zamora*, 213 P.3d at 494; *Barrett*, 908 P.2d at 694-95. "In this context," the panel's findings are "mere evidence, which the jury is free to accept or reject." *Zamora*, 213 P.3d at 494.

 The plaintiff next asserts that admission of the hearing panel's findings "infects the sanctity of the jury" to pass upon the issues and weigh the evidence. The right to a jury trial guaranteed by Part I, Article 20 entails the right to have a jury decide "the actual controversy between the parties — the questions of fact about which they are contending." *King*, 57 N.H. at 354; *see Ex Parte Peterson*, 253 U.S. 300, 310 (1920) (right to jury trial under Seventh Amendment to Federal Constitution mandates "that the ultimate determination of issues of fact by the jury be not interfered with"). The plaintiff contends that "[b]y mandating the admission of the panel findings at trial, the legislature has undermined the constitutional power of the jury to independently decide all issues in dispute."

■ We disagree with the plaintiff's broad assertion that the mere admission of the panel's findings violates the right to a jury trial. "Similar charges have been leveled in nearly all of the cases which have addressed the constitutionality of statutes providing for some form of non-binding review of medical malpractice claims prior to trial." *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 346 (Alaska 1988). "The vast majority have rejected the charge on the ground that the jury remains the ultimate arbiter of factual questions and upon the belief that the jury weighs the panel's opinion in the same manner as it weighs all of the other evidence presented." *Id.* (citing cases); *see, e.g., Treyball v. Clark*, 483 N.E.2d 1136, 1137 (N.Y. 1985) (requiring admission of unanimous findings of panel does not infringe upon plaintiff's state constitutional right to a meaningful jury trial because findings are not binding upon jury and "jury . . . remains the final arbiter of questions of fact raised at trial"). "[L]egal commentators generally agree that admissibility of a panel award does not impinge upon the right to jury trial." *Keyes*, 750 P.2d at 346 n.3 (citing articles). As the United States Supreme Court explained when reviewing a statute that required admitting the findings and order of an executive agency in a subsequent civil action by a shipper against a defendant carrier, such a provision "cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury," and, therefore, "does not abridge the right of trial by jury or take away any of its incidents." *Meeker & Co. v. Lehigh Valley R. R.*, 236 U.S. 412, 430 (1915).

To support its argument, the plaintiff relies upon *King*. *King* concerned the constitutionality of a statutory process under which a court could, without the parties' consent, commit a civil case to a referee, *Copp v. Henniker*, 55 N.H. 179, 202 (1875), who issued a written report, including findings of fact and rulings of law. *See King*, 57 N.H. at 346; Laws 1874, 97:13. The referee's report was deemed "evidence of all the facts stated therein, subject to be impeached by either party." Laws 1874, 97:13. Under the statute at issue in *King*, the jury had only to decide whether the referee's report was correct. *See King*, 57 N.H. at 354. The court ruled that this violated the right to a jury trial:

> On no ground of constitutional principle can the legislature send the issue to the presiding judge, or any other auxiliary tribunal, for decision, and then leave to the jury only the question of the correctness of the auxiliary decision, requiring the jury to give to that decision, on the trial of the question of its correctness, such weight as the legislature choose[s] to attach to it.

*Id.* at 355.

██ However, this part of *King* may no longer be good law, *see Murphy*, 95 N.H. at 278. Moreover, the statute at issue in *King* is distinguishable from the medical injury screening panel statute. In *King*, the jury was instructed that the referee's findings *were* "evidence of all the facts stated therein." *King*, 57 N.H. at 348 (quotation omitted). By contrast, under RSA 519-B:9, I(e), the jury is specifically instructed that it is *not* bound by the panel's report and must reach its own conclusion "based on all of the evidence" presented at trial. Under RSA chapter 519-B, the jury is free to give the panel report the weight it chooses to give it. In this way, the task of the jury under RSA chapter 519-B differs from that of the jury under the statute at issue in *King*. Whereas the jury in the statute at issue in *King* decided only whether the referee's report was correct, a jury in a case governed by RSA chapter 519-B decides all issues of fact bearing upon a medical provider's liability, and is free to completely disregard the panel's report.

Although we reject the plaintiff's assertion that the mere admission of the panel's report, in and of itself, violates the jury trial right, we agree with the plaintiff that because of other statutory provisions, the jury is denied information that may be crucial to its assessment of the report. Under the statute, as currently configured, parties are unable to mount a meaningful challenge to the panel's report at a subsequent trial. RSA 519-B:8, I(a) precludes the introduction at trial of "*any evidence and statements made by a party*" at the panel proceeding unless the evidence and statements are introduced for impeachment purposes or the party who presented the evidence or made the statement agrees to their introduction at trial. (Emphasis added.) RSA 519-B:8, III similarly precludes the parties from asking or compelling an expert, who testified at the panel proceeding on behalf of the party's opponent, to testify at a subsequent trial. RSA 519-B:9, I(f) requires the trial court to instruct the jury that "the parties may not introduce panel documents or present witnesses to testify about the panel proceedings, and they may not comment on the panel findings or proceedings" except under limited circumstances. These provisions allow admission of the panel's report but deny the parties the opportunity to explain or challenge the report, or to place it in context. The effect of these provisions is to materially impair the jury's ability to evaluate the panel's findings.

In this regard we find the Maine Supreme Judicial Court's opinion in *Irish* instructive. *Irish* concerned a medical injury screening panel statute like RSA chapter 519-B. *Irish*, 691 A.2d at 668 n.3. Under the Maine statute, the panel's findings were required to be admitted in any subsequent jury trial without explanation. *Id.* at 669. The court ruled that this provision of the law withheld "information that is essential to the jury's

fact-finding role." *Id.* at 670. The court held that although the trial court "instructed the jurors that they were not bound by the findings and should give the findings whatever weight they thought appropriate[,] [t]his admonition rings hollow when the jurors are deprived of any and all information of the context in which the panel operates." *Id.* Accordingly, the court crafted mandatory jury instructions, upon which the mandatory jury instructions set forth in RSA 519-B:9, I, are modeled. *Id.* at 671; *see* RSA 519-B:9, I. "This information," the court reasoned, would give the jury "a basis . . . to understand the nature of the panel findings and to put the findings in context in evaluating all of the evidence presented at the trial." *Irish*, 691 A.2d at 671. The addition of the mandatory jury instructions, the court ruled, preserved the purposes of the statute, the jury's fact-finding role, and a plaintiff's right to a jury trial, and, ultimately, rendered the Maine statute "a legitimate exercise of legislative power consistent with the constitutional right of a trial by a jury." *Id.*

 Although the mandatory instructions set forth in RSA 519-B:9, I, codify those crafted by the *Irish* court, we conclude that they are insufficient. Despite the mandatory jury instructions, a New Hampshire jury is, nonetheless, deprived of information "essential to [its] fact-finding role." *Id.* at 670. Therefore, we conclude that portions of RSA 519-B:8, I(a), III and RSA 519-B:9, I(f) impermissibly infringe upon the jury's fact-finding role, and, consequently, deprive a plaintiff of the state constitutional right to a jury trial.

Specifically, we hold that the following provisions are unconstitutional under Part I, Article 20 of the State Constitution: (1) RSA 519-B:8, I(a), to the extent that it precludes the introduction at trial of "evidence and statements made by a party or a party's representative"; (2) RSA 519-B:8, III, to the extent that it prevents the parties from asking or compelling an expert, who testified at, or whose report was submitted at, the panel proceeding on behalf of the party's opponent, to testify at a subsequent trial; and (3) RSA 519-B:9, I(f), to the extent that it requires the trial court to instruct the jury that the parties may not introduce panel documents or present witnesses to testify about the panel proceedings, and that they may not comment on the panel findings or proceedings. Because the plaintiff has not argued or demonstrated that, in order for the jury to properly assess the panel's report at trial, it needs information about "[t]he deliberations and discussion of the panel," we leave this part of RSA 519-B:8, III intact, and observe, in particular, that nothing herein is intended to suggest that parties may call screening panel members to testify as witnesses at trial.

 We need not decide as a matter of law the type or amount of evidence a party may use to challenge a panel report in a subsequent trial. The trial

court maintains its broad discretion to decide, on a case by case basis, the type or amount of evidence that may be admitted at trial. We note that, at oral argument, concerns were raised that permitting an attack upon the findings of the panel would redirect the focus of trials away from the conduct of the parties and toward the panel proceedings, and could spawn a "trial within a trial" regarding the validity of panel findings. We are not insensitive to these concerns, but we also are aware that trial courts deal with these kinds of relevancy-versus-competing-interests issues on a regular basis in a variety of contexts. *See, e.g.*, N.H. R. Ev. 403. We are confident that they are up to the task in this context as well.

*Affirmed in part; reversed in part; and remanded.*

HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.