NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
No. 2013-737

THE STATE OF NEW HAMPSHIRE

v.

SHAWN CARTER

Argued: October 15, 2014
Opinion Issued: November 25, 2014

Joseph A. Foster, attorney general (Stacey L. Pawlik, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

LYNN, J. This is an interlocutory appeal by the defendant, Shawn Carter, from a decision of the Superior Court (O'Neill, J.) denying his motion for pre-indictment discovery pursuant to RSA 604:1-a (2001), on the ground that the statute violates the separation of powers provision of Part I, Article 37 of the New Hampshire Constitution because it conflicts with Superior Court Rule 98. We reverse and remand.

I

The pertinent facts are not in dispute. On July 10, 2013, the State filed four complaints against the defendant in the circuit court. Two complaints

charged him with alternative counts of knowing or reckless second degree murder of Timothy Carter; and two complaints charged him with alternative counts of knowing or reckless second degree murder of Priscilla Carter. See RSA 630:1-b, I (2007). The defendant appeared before the circuit court on the same date, and was held without bail. On August 6, the circuit court found probable cause to support the complaints, and the charges were bound over to the superior court.

On August 9, the defendant filed a motion for pre-indictment discovery in superior court, relying on RSA 604:1-a in support of the motion. This statute provides:

> **Discovery in Criminal Matters.** After an accused person has been bound over to the superior court and prior to indictment, he shall have the same rights to discovery and deposition as he has subsequent to indictment, provided that all judicial proceedings with respect thereto shall be within the jurisdiction of the superior court, and notice of petition therefor and hearing thereon shall be given to the county attorney, or the attorney general if he shall have entered the case.

RSA 604:1-a. The State objected to the motion, and, following a hearing, the superior court denied the motion by a written order dated September 26. Relying primarily on our decision in Opinion of the Justices (Prior Sexual Assault Evidence), 141 N.H. 562 (1997) (PSAE), the court found RSA 604:1-a unconstitutional because it is a procedural statute that conflicts with Superior Court Rule 98, a rule that establishes, among other things, time limits for discovery in criminal cases, and therefore usurps the essential power of the judiciary to control its own proceedings. On October 28, over the State's objection, the superior court granted the defendant's motion to approve an interlocutory appeal of its ruling. We accepted the appeal on December 6. In the meantime, on October 3, the defendant was indicted on alternative counts of first degree murder and second degree murder with respect to each victim, see RSA 630:1-a (2007); RSA 630:1-b, and shortly thereafter he received discovery from the State.

II

Because the defendant has now received the discovery he sought by way of his pre-indictment motion, before turning to the merits, we will briefly address the issue of mootness. "[T]he question of mootness is not subject to rigid rules, but is regarded as one of convenience and discretion." Batchelder v. Town of Plymouth Zoning Bd. of Adjustment, 160 N.H. 253, 255-56 (2010) (quotation omitted). The State does not argue that this case is moot, and given that, in an interlocutory appeal such as this one, the interval between the filing of a felony complaint in circuit court and the subsequent return of an

2

indictment after the case is bound over to superior court normally is far less than the time required for briefing, argument and decision in this court, we find that this case satisfies the familiar exception to the mootness doctrine for cases that "are capable of repetition, yet evading review." Fischer v. Superintendent, Strafford County House of Corrections, 163 N.H. 515, 518 (2012) (quotation omitted). Accordingly, we conclude that this case is not moot.

III

On appeal, the defendant argues that RSA 604:1-a does not violate Part I, Article 37 of the New Hampshire Constitution because: (1) the statute (a) does not usurp or impair an essential function of the judiciary, and (b) can be read in harmony with Rule 98; and (2) to the extent there is a conflict between the statute and the rule, the statute must prevail. We agree with the defendant on both points.

We exercise de novo review of the trial court's ruling on the constitutionality of a statute. See In the Matter of Bordalo & Carter, 164 N.H. 310, 314 (2012). As the party challenging the constitutionality of RSA 604:1-a, the State bears the burden of demonstrating that it is unconstitutional. New Hampshire Health Care Assoc. v. Governor, 161 N.H. 378, 385 (2011). "In reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds." Id. (quotation omitted). "This means that we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution. It also means that when doubts exist as to the constitutionality of a statute, those doubts must be resolved in favor of its constitutionality." Id. (quotations and citation omitted). Because the trial court's ruling was not based on the application of RSA 604:1-a to the particular facts and circumstances of this case, it amounts to a determination that the statute is facially unconstitutional. See State v. Hollenbeck, 164 N.H. 154, 158 (2012). That being the case, the State, as challenger of the statute's constitutionality, "must establish that no set of circumstances exist under which [it] would be valid." Id. (quotation omitted).

IV

Part I, Article 37 of the New Hampshire Constitution provides:

> In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity.

N.H. CONST. pt. I, art. 37.  We have repeatedly observed that this provision "contemplates no absolute fixation and rigidity of powers between the three great departments of government."  Petition of S. N.H. Med. Ctr., 164 N.H. 319, 327 (2012) (quotation omitted).  "Instead, it expressly recognizes that, as a practical matter, there must be some overlapping among the three branches of government and that the erection of impenetrable barriers among them is not required."  Id. (quotation omitted).  Article 37 "is violated only when one branch usurps an essential power of another."  Id. (quotation omitted).  For this to occur, the offending branch must act to "defeat or materially impair the inherent functions" of another branch.  State v. Merrill, 160 N.H. 467, 472 (2010).

Like the trial court, the State relies primarily on the PSAE decision in support of its constitutional challenge to RSA 604:1-a.[1]  There can be no doubt that in PSAE we followed the minority view exemplified by cases such as Winberry v. Salisbury, 74 A.2d 406 (N.J. 1950), in opining that the separation of powers provision of the State Constitution granted the judiciary the exclusive power to make procedural law, including rules of evidence.  See PSAE, 141 N.H. at 569-71; see also Lynn, Judicial Rule-Making and the Separation of Powers in New Hampshire: The Need for Constitutional Reform, 42 N.H.B.J. 44, 50, 61 (March 2001) (hereinafter "Judicial Rule-Making").  However, as we recently explained in Petition of Southern New Hampshire Medical Center, PSAE was an advisory opinion, which does not constitute binding precedent, and its discussion of the separation of powers doctrine used language that was "unnecessarily broad."  Petition of S. N.H. Med. Ctr., 164 N.H. at 328.

Nonetheless, the State seeks to distinguish this case from Petition of Southern New Hampshire Medical Center on the grounds that in that case we viewed the challenged provisions of the medical injury screening panel statute as the equivalent of rules of evidence.  See id. at 327 ("we assume, without deciding, that the plaintiff's characterization [of the provisions of RSA 519-B:8-:10 (2007) as akin to evidentiary rules] is correct").  The State argues that "Petition of S. N.H. Med. Ctr. merely restricted the application of the analysis contained in [PSAE] with respect to evidentiary rules, but did not find that the

---

[1] The State also relies upon State v. LaFrance, 124 N.H. 171 (1983), to argue that RSA 604:1-a violates the separation of powers doctrine because it interferes with the power of the courts to control their own proceedings.  LaFrance, however, is readily distinguishable because the statute at issue in that case, which required that police officers be permitted to wear firearms in court notwithstanding the objection of the presiding judge, limited the power of the judiciary to control the physical conduct of persons appearing in the state's courtrooms.  As we explained, "[t]he power of the judiciary to control its own proceedings, the conduct of participants, the actions of officers of the court and the environment of the court is a power absolutely necessary for a court to function effectively and do its job of administering justice."  LaFrance, 124 N.H. at 179-80 (emphasis added).  The statute at issue in this case, which deals with the timing of the prosecutor's discovery obligations, does not involve a similar intrusion into a core function of the judiciary absolutely necessary to carrying out its assigned responsibilities under the constitution.

4

case was overruled or inapplicable with respect to rules which relate only to court practices and procedure." We disagree.

Although it is true that Petition of Southern New Hampshire Medical Center dealt with what we assumed to be legislation regarding an evidentiary matter, the State's argument fails to take account of the analysis that led us to decline to follow PSAE's reasoning. In particular, the State overlooks our discussion about the constitutional history surrounding the adoption of the amendment that added Part II, Article 73-a to the State Constitution, which explicitly codified this court's rule-making power.[2] Not only does that amendment contain no language indicating that the court's rule-making power is to be exclusive, but the record of the constitutional convention that proposed the amendment makes clear that it was not intended to abridge legislative authority over court procedures, see Petition of S. N.H. Med. Ctr., 164 N.H. at 328-29, and the "citizens voting on the 1974 amendment were not informed that the authority of the judiciary to create procedural rules was intended to be exclusive." Id. at 329 (emphasis added).[3]

The authority of the legislature to enact statutes addressing matters of court procedure had been recognized by this court long before the adoption of Article 73-a. See, e.g., Cater v. McDaniel, 21 N.H. 231, 232 (1850) ("The practice of taking depositions in New Hampshire has always been governed by the statutes on that subject from the first organization of the courts, and the courts have no authority to dispense with any of the requirements of the statute."); LaCoss v. Lebanon, 78 N.H. 413, 417 (1917) (holding that court had power to order pre-trial discovery of sketch and photograph prepared by defendant "unless there is some statute of this state or rule of procedure which forbids it" (emphasis added)). Indeed, as defendant's counsel correctly observed at oral argument, were it truly the case that the legislature lacked power to enact laws addressing judicial procedure, innumerable long-standing sections of the Revised Statutes Annotated that address matters of court practice and procedure would be called into question. Having no desire to foster any such uncertainty, we now clarify that "the legislature['s] share[d] authority with the judiciary to regulate court procedure," Petition of S. N.H. Med. Ctr., 164 N.H. at 329-30, is not limited to evidentiary matters but covers court procedure in general. Thus, the mere fact that RSA 604:1-a is a statute

---

[2] Long before the adoption of Part II, Article 73-a, "[t]he inherent rule-making authority of courts of general jurisdiction" was well recognized in New Hampshire. Nassif Realty Corp. v. National Fire Ins. Co., 107 N.H. 267, 268-69 (1966) (quotation omitted).

[3] As the colloquy between Delegates Gross and Nighswander that we quoted in Petition of Southern New Hampshire Medical Center makes clear, the purpose of Article 73-a was simply to consolidate the judiciary's pre-existing rule-making power, which had theretofore been exercised separately by each level of court, in this court. See Petition of S. N.H. Med. Ctr., 164 N.H. at 328-29.

5

that regulates court procedures does not render it violative of the separation of powers doctrine.

As we also made clear in <u>Petition of Southern New Hampshire Medical Center</u>, however, "there obviously are limits on how far the legislature may go. The legislature may not, for example, enact procedural statutes that compromise the core adjudicatory functions of the judiciary to resolve cases fairly and impartially and to protect the constitutional rights of all persons who come before the courts." <u>Id</u>. at 330. The State maintains that RSA 604:1-a falls into this prohibited category of legislation because it interferes with the superior court's ability to regulate discovery, a function that the State characterizes as "an essential power of the judiciary." The State's argument fails because it is based on two faulty premises: (1) that Superior Court Rule 98 prohibits pre-indictment discovery; and (2) that RSA 604:1-a mandates that the superior court grant pre-indictment discovery in all cases. Neither premise is correct.

At the time of the trial court's ruling, Superior Court Rule 98 required that the State provide most discovery materials specified in the rule within either ten or thirty calendar days after the entry of a not guilty plea by the defendant. <u>See</u> <u>Super. Ct. R.</u> 98 (A)(1),(2).[4] Since a defendant cannot be required to enter a plea to a felony charge unless and until he has been indicted by the grand jury, <u>see</u> N.H. CONST. pt. I, art. 15; RSA 601:1 (2001), the rule obviously comes into play with respect to felony charges only after the defendant has been indicted. However, no provision of Rule 98 <u>prohibits</u> the superior court from ordering discovery prior to the return of an indictment. <u>Cf.</u> <u>Associated Press v. State of N.H.</u>, 153 N.H. 120, 144 (2005) (noting that "[n]othing in RSA 458:15-b, I, <u>requires</u> that access [to financial affidavits in domestic relations cases] always be granted, without leave of court, to the guardian ad litem or any state or federal officials outside of the Office of Child Support"). Rather, consistent with our practice of harmonizing a statute and a court rule whenever possible, <u>In the Matter of Maynard & Maynard</u>, 155 N.H. 630, 635 (2007), we conclude that the rule can sensibly be construed as simply not addressing the matter of pre-indictment discovery at all. <u>See</u> <u>id</u>. (holding that former Superior Court Rule 185 "specifies the timing of a request for alimony in the original divorce proceedings, whereas RSA 458:19 permits a request for alimony to be filed for up to five years after the divorce").

---

[4] The Rules of the Superior Court of the State of New Hampshire, which include Rule 98 that is at issue in this opinion, were renamed, effective October 1, 2013, as the "Rules of the Superior Court of the State of New Hampshire Applicable in Criminal Cases Filed in Superior Court." Accordingly, Rule 98 is now cited as Super Ct. Crim. R. 98. Under temporary amendments to Super Ct. Crim. R. 98, approved in February 2014, all of the specified discovery materials must be disclosed within ten days after entry of a not guilty plea. <u>See</u> Sup. Ct. Order of Feb. 20, 2014, Appx. A.

Nor does RSA 604:1-a require the superior court to grant pre-indictment discovery in every case in which a felony charge is bound over to it. On the contrary, the statute specifically states that the accused "shall have the same rights to discovery and deposition as he has subsequent to indictment." RSA 604:1-a (emphasis added). And subsequent to indictment, discovery and depositions are governed by Rule 98 and RSA 517:13 (2007), respectively, both of which generally preserve the court's discretion to regulate the scope and timing of discovery so as to balance the competing interests of all affected parties or individuals (the defendant, the State, victims, witnesses, etc.) and to achieve justice in the particular case. See Super. Ct. Crim. R. 98(J) ("Upon a sufficient showing of good cause, the court may at any time order that discovery required hereunder be denied, restricted or deferred, or make such other order as is appropriate."); RSA 517:13, II (stating that "[t]he court in its discretion may permit either party to take the deposition of any witness, except the defendant, in any criminal case" upon finding that statutory criteria are satisfied).[5]

Because RSA 604:1-a grants an accused only such rights to pre-indictment discovery as exist post-indictment, the statute preserves the court's power to regulate pre-indictment discovery, tailoring it to the facts and circumstances of the particular case, in the same manner as it regulates post-indictment discovery. Thus, we agree with the defendant that, "[i]f the State, in a particular case, believes that pre-indictment discovery should not be required, it is free to request that discovery be 'deferred' based upon a showing of 'good cause.'"

Additionally, to the extent that there is any residual tension between the statute and the rule (insofar as Rule 98 can be viewed as implicitly establishing a default position that generally disallows discovery to a felony defendant until after indictment, whereas RSA 604:1-a establishes the default position of allowance of pre-indictment discovery), we conclude that the statute trumps the rule. As stated previously, legislative power to address matters of court procedure is precluded only if the legislation at issue "compromise[s] the core adjudicatory functions of the judiciary to resolve cases fairly and impartially and to protect the constitutional rights of all persons who come before the courts." Petition of S. N.H. Med. Ctr., 164 N.H. at 330. The State offers no persuasive argument as to how or why affording an accused person access to discovery materials prior to indictment compromises the core adjudicatory functions of the judiciary, particularly since, by limiting pre-indictment discovery to that available post-indictment, the statute preserves the courts' ability to regulate discovery on a case-by-case basis as justice may require. That being so, the legislature's authority, as primary repository of the law-

---

[5] RSA 517:13, III, which applies to expert witnesses, does not give the court discretion to deny the deposition of expert witnesses in felony cases, see State v. Martin, 142 N.H. 63, 65 (1997), but the timing of such depositions is left to the court's discretion.

making power, to establish the State's public policy with respect to the timing of the prosecution's discovery obligations in felony cases, prevails over any conflicting policy set forth in Rule 98.[6]  See Deming v. Foster, 42 N.H. 165, 178 (1860) (recognizing courts' inherent authority to make both general and special rules, but adding, "no court here, or in England, ever claimed the power to dispense with or disregard any enactment of the legislature, passed in the due exercise of its constitutional powers"); McNamara, The Separation of Powers Principle and the Role of the Courts in New Hampshire, 42 N.H.B.J. 66, 83 (June 2001) ("Review of the[] cases leads to the conclusion that if there is a conflict between the Legislature and the Judiciary, then the legislative action must control unless its action strikes at the heart of the court's ability to act as one of the 'judicatories and courts of record' described in Part II, Article 4 of the New Hampshire Constitution."); Judicial Rule-Making, 42 N.H.B.J. at 48 (March 2001) ("[U]ntil the PSAE case there was never any question that [the judicial branch's rule-making authority] was subject to overriding legislative control.").

In sum, just as the legislature possesses the power to enact laws that override this court's common law and statutory construction precedents, see In re Estate of Sharek, 156 N.H. 28, 30 (2007) ("Unless otherwise inhibited by either the State or Federal Constitutions, the Legislature may change existing laws, both statutory and common, at its pleasure . . . ." (quotation omitted)), so also do its statutory enactments prevail over conflicting court rules, unless those enactments compromise the core adjudicatory functions of the judiciary.

Reversed and remanded.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

---

[6] If the State believes that RSA 604:1-a unwisely establishes the presumptive availability of discovery materials prior to the return of an indictment, its remedy is to seek relief from the legislature, in the form of amendment or repeal of the statute.